## Second Carey Trust, an Express Trust, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 93611.   Promulgated April 9, 1940.

*E. J. Lundy, Esq.,* for the petitioner.
*Frank B. Schlosser, Esq.,* for the respondent.

804

OPINION.

KERN: It is necessary to first consider the question of whether petitioner was, during the taxable year before us, an association taxable as a corporation, within the meaning of section 801 (a) (2) of the Revenue Act of 1934, as determined by the respondent.

Petitioner contends that it is not so taxable for the reason that during the year 1934 it was not engaged in carrying on a business

for profit, but was a liquidating trust, and its entire activities were in pursuance of its purpose of liquidation. It contends in the alternative that if found to be an association taxable as a corporation it is entitled: (a) to depletion and depreciation, and (b) to a deduction of 12½ percent of the value of its capital in determining its excess profits tax liability.

The respondent contends that the petitioner was created solely for the purpose of operating, and did operate, a business in a manner so similar to the form commonly used by corporations that it must be taxed as a corporation within the rationale of the decisions of the Supreme Court in *Morrissey* v. *Commissioner*, 296 U. S. 344; *Helvering* v. *Combs*, 296 U. S. 365, and related cases.

Petitioner's contention that it is a liquidating trust is based on the premise that its income for the taxable year was from the sale of oil and gas and constituted a *pro tanto* liquidation of its "sole assets." Petitioner's assets consisted in an interest in oil and gas leases and the same interest in the machinery and equipment necessary to explore and operate these leases. The trust was created for a period of 20 years and provided for liquidation and sale of assets at the end of that period unless terminated and liquidated sooner as therein provided. Obviously, it presupposed not only the operation of the producing wells then in existence but further exploration, drilling, and operation of new wells. The mere fact that its income was from the sale of oil and gas does not make it a liquidating trust or prevent its classification as an association for tax purposes, *Helvering* v. *Combs*, *supra*. The same reasoning might be applied to any corporation receiving income from a wasting asset.

Nor is the fact that the actual operation of the property was conducted by the Westgate Oil Co. determinative of the question before us. Petitioner not only owned an undivided interest in the oil property but the same interest in the machinery and equipment required for operation, and it paid its proportionate share of the cost of operation. Obviously to the extent of such undivided interest, the Westgate Oil Co. operated the property for petitioner. Cf. *Helvering* v. *Combs*, *supra*. The trustees were authorized to sell beneficial interests which were registered with the Securities and Exchange Commission; to use the proceeds therefrom to pay for the trust property; to take title to all property and property rights so acquired or thereafter coming into the trust; to hold such property the same as the sole and exclusive owners thereof and to convey good title to any property sold; to pay trust debts; to hold as their own any unsold beneficial interests; to operate the property and to employ agents and employees necessary in the operation and management of the property; to pay all costs incident to the operation and develop-

ment of the working interest and all necessary expenses of carrying on the business of the trust; to withhold any reserves deemed necessary for future expenses and to pay over to the holders of the certificates of beneficial interest the remaining net income from the property; and to change, alter, or terminate the trust with the consent of the owners of two-thirds of the beneficial units of the trust.

The trustees, collectively, were charged with the conduct of all business and the execution of all instruments in writing in the name of the trust and they could adopt a seal. The trust instrument provided that they should elect one of their number president, one vice president, and one secretary-treasurer, and designate one of the officers so elected as "Chief Executive Officer." The trustees had no individual liability except for willful misconduct.

The beneficial unit shares had a fixed par value. The holders of beneficial units were not personally liable for the acts of the trustees or the obligations of the trust. They owned no property of the trust and their rights as unit holders were limited to the receipt of a pro rata share of the net income of the proceeds from the sale of the assets on liquidation. Their certificates of beneficial interest, which were the sole evidence of their interest, were transferable on the books of the trust in person or by attorney when properly endorsed.

The trust provided a medium of centralized management of the enterprise and the sale and transfer of beneficial units did not affect its continuity. Under the terms of the trust the parties secured the advantage of perpetuation of trustees, limitation of liability, centralized control, and the united capital of a large group for the purposes of the enterprise—advantages usually incident to a corporate organization—and avoided the responsibilities of a partnership.

We hold the petitioner is an association taxable as a corporation. *Morrissey* v. *Commissioner, supra; Helvering* v. *Combs, supra; Helvering* v. *Coleman-Gilbert Associates,* 296 U. S. 369.

We come then to consider petitioner's alternative contentions.

In computing the deficiency in question the respondent refused to allow any deduction for depreciation or depletion for the reason that petitioner had failed to file a statement, designated as "Form O", containing certain information from which depreciation and depletion may be computed, as required by article 23 (m)-12 of Regulations 86. Did this result in an erroneous determination of petitioner's tax liability?

The determination of the respondent is prima facie correct and the burden is on the petitioner who alleges error to show by competent evidence that it is erroneous. At the hearing in this case the petitioner, who it appears was in possession of the necessary facts, introduced no evidence to show that it is entitled to depreciation or

allowable depletion based on cost and there are no facts in the record upon which either depreciation or cost depletion can be computed. We are, therefore, unable to determine that petitioner is entitled to any depreciation or that allowable depletion based on cost is greater than depletion computed on the basis of 27½ percent of the gross income from the property in accordance with section 114 (b) (3) of the Revenue Act of 1934.

At the close of the hearing, petitioner filed a motion asking that, if the Board should hold petitioner to be an association taxable as a corporation, then a further hearing be had to determine the correct amount of the tax. It was a motion asking for a further hearing at some future date contingent upon our decision of one of the several issues then before us contrary to petitioner's contention. This motion was made after both parties announced at the hearing that they rested. To grant the motion under the facts and circumstances of this case would be tantamount to permitting the issues to be tried piecemeal after they were submitted as a whole. This we will not do. The necessary data was in the possession of petitioner at the time of the hearing, and we see no good reason why it should not have been introduced in evidence at that time in support of petitioner's alternative allegations of error. Obviously, it could not have prejudiced petitioner's position on the primary issue in the case. A petitioner before this Board may make alternative allegations of error, but it may not at the hearing withhold evidence material to those allegations and, after the primary issues have been decided against it, reopen the case on motion to introduce such evidence. The motion to reopen the case for the purpose of submitting additional evidence is therefore denied.

Since petitioner has not furnished us with figures as to value or costs, we can not hold that the respondent erred in his determination as to depreciation or in his determination that petitioner is not entitled to depletion based upon cost. However, it does appear from the record that the income here in question was from oil and gas wells, and, since the petitioner has not shown that allowable depletion based on cost is greater than percentage depletion, we hold that petitioner is entitled to depletion in the amount of 27½ percent of its gross income from the properties as provided under section 114 (b) (3) of the Revenue Act of 1934.

The second alternative issue raised by the pleadings involves the question of whether petitioner is entitled to a deduction from net income of 12½ percent of the declared value of its capital stock in computing its excess profits tax.

The petitioner did not file a capital stock return for 1934, but in 1937 a capital stock tax based upon a valuation of $500,000 was

assessed against it, together with a penalty of 25 percent of the tax. This assessment was paid by the petitioner. Since petitioner did not have an income taxable year prior to June 30, 1934, the declared value of its capital stock, as expressed in the assessment, was apparently based on the value of its units of beneficial interest at the date of its organization, which were sold for $500,000.

The Revenue Act of 1934[1] imposed a tax upon the adjusted declared value of the capital stock of corporations and an excess profits tax upon the net income of such corporations "as is in excess of 12½ per centum of the adjusted declared value of its capital stock * * *." The purpose of the statute is "* * * To allow the taxpayer to fix for itself the amount of the taxable base for purposes of computation of the capital stock tax, but with the proviso that the amount thus fixed for the first taxable year shall be accepted, with only such changes as the statute prescribes for the purpose of computing the capital stock and excess-profits taxes in later years." *Haggar Co.* v. *Helvering*, 308 U. S. 389. Obviously the amount of declared value of capital fixed for the first year, which is the

---

[1] SEC. 701. CAPITAL STOCK TAX.

(a) For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(d) Every corporation liable for tax under this section shall make a return under oath within one month after the close of the year with respect to which such tax is imposed to the collector for the district in which is located its principal place of business or, if it has no principal place of business in the United States, then to the collector at Baltimore, Maryland. Such return shall contain such information and be made in such manner as the Commissioner with the approval of the Secretary may by regulations prescribe. &ast; &ast; &ast;

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section (or as of the date of organization in the case of a corporation having no income-taxable year ending at or prior to the close of the year for which the tax is imposed by this section). &ast; &ast; &ast;

SEC. 702. EXCESS-PROFITS TAX.

(a) There is hereby imposed upon the net income of every corporation, for each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 701, an excess-profits tax equivalent to 5 per centum of such portion of its net income for such income-tax taxable year as is in excess of 12½ per centum of the adjusted declared value of its capital stock (or in the case of a foreign corporation the adjusted declared value of capital employed in the transaction of its business in the United States) as of the close of the preceding income-tax taxable year (or as of the date of organization if it had no preceding income-tax taxable year) determined as provided in section 701. If the income-tax taxable year in respect of which the tax under this section is imposed is a period of less than 12 months, such adjusted declared value shall be reduced to an amount which bears the same ratio thereto as the number of months in the period bears to 12 months. For the purposes of this section the net income shall be the same as the net income for income tax purposes for the year in respect of which the tax under this section is imposed.

year before us, is a matter of practical indifference to the Government, since the statute guards against the loss of revenue from capital stock taxes through an understatement of capital, by a corresponding increase in excess profits taxes.

The capital stock tax and the excess profits tax are interrelated and the statutes must be construed together in the light of their purpose. Cf. *Haggar Co.* v. *Helvering, supra.* The primary purpose of the excess profits tax was to assure a reasonable valuation for capital stock purposes. Finance Commitee Report No. 558, p. 5 (1), 73d Cong., Revenue Act of 1934. The provision in the capital stock tax statute that the "declaration of value" for the "first year" can not be amended was inserted in order to avoid controversy by fixing the value of capital stock for succeeding years. Finance Committee Report, *supra.* We held in *Del Mar Addition*, 40 B. T. A. 833, that these purposes were not served where the taxpayer did not file a "first return" within the time prescribed by the statute, and in a subsequent year filed a late return with the sole purpose of reducing its excess profits tax liability. But where, as here, the taxpayer has not filed any return for the "first year" and the Commissioner from the information available to him has determined and declared a value for the "first year" and has assessed and collected the capital stock tax on such declared value, we think the value so declared and determined should be considered the declared value for the purposes of the excess profits tax. We hold, therefore, that the petitioner is entitled to an adjusted declared value of its capital stock in the amount of $500,000 for the purpose of computing its excess profits tax, and direct that the computation be made accordingly.

There is some evidence to the effect that during the taxable year approximately $36,882.84 of income applicable to unsold units was permitted by the trustees to be retained by the trust for distribution to the unit holders. The reason for this action does not appear. This amount was included in income by the respondent in determining the deficiency here in question. The petitioner has raised no issue as to this in the pleadings. Under the evidence before us, we can not disturb this determination.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

BLACK dissents from the holding in the majority opinion that petitioner is an association taxable as a corporation.