**SUCCESSION of Walter J. HARRISON (Shirley H. Hyde, Testamentary Executrix) and Mrs. Annette W. Harrison, widow of Walter J. Harrison, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**William H. HARRISON and Loreto K. Harrison, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Mrs. Lydia H. Couturie RYAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**SUCCESSION of Henry W. COUTURIE, Jr. (Stephen C. Hartel, Testamentary Executor) and Mrs. Lydia H. Couturie Ryan, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Herbert LEE and Gloria K. Lee, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. Nos. 74–339–C, 74–509–C, 74–620–C, 74–923–C and 74–619–C.

United States District Court, E. D. Louisiana.

March 18, 1975.

C. Ellis Henican, Helene McG. Walker, New Orleans, La., for plaintiffs.

Fred W. Schwendimann, III, Washington, D. C., for defendant.

ALVIN B. RUBIN, District Judge:

Prior to April 14, 1960, the plaintiffs[1] owned certain oil properties in Louisiana. On that date they incorporated the Harrison Property Management Co., Inc., and made a simulated transfer of the properties to the corporation. A counter letter was reserved expressing the true intention of the parties, that is, that the corporation did not have "any right, title or interest in and to said Property other than the right to manage and administer said Property. . . ." The counter letter also contained a provision stating that all expenses incurred by the corporation in managing the property would "be charged to and against the . . . Beneficial Owner . . . in the proportions of the true ownership. . . ." The plaintiffs state that the reason for this arrangement was to facilitate management of the properties.

In the years 1960 through 1963, the corporation reported no income and no expenses; the plaintiffs reported all of the income generated by the properties they had transferred to the corporation and claimed a deduction for the expenses they had reimbursed in accordance with the counter letter.

After an audit of the returns of the plaintiffs and the corporation, the Commissioner reached conclusions conflicting with the taxpayers' conception of the facts and law:

(1) The corporation was a taxable entity, and, as such, owed taxes for the years in question.

(2) Since the corporation was a taxable entity, the expenses of managing the property could be deducted only by the corporation.

Hence, he disallowed the deductions claimed by the plaintiffs for the amounts they contributed to pay the expenses of the corporation.

The plaintiffs paid both the corporation and individual deficits, then brought a refund suit to recoup the sums paid on behalf of the corporation. In Harrison Property Management Co., Inc. v. United States, 1973, 475 F.2d 623, 201 Ct.Cl. 77, the Court of Claims upheld the Commissioner's contention that the corporation was a taxable entity and thus was taxable on the income it received and passed on to the plaintiffs. The Supreme Court denied certiorari, 1974, 414 U.S. 1130, 94 S.Ct. 868, 38 L. Ed.2d 754, and the judgment became final.

The plaintiffs then filed suit in this court for a refund of the deficiency they had individually paid, contesting, inter alia,[2] the Commissioner's disallowance of a deduction on their individual returns for amounts contributed to defray the expenses of managing the property. The government has filed a motion for summary judgment, asserting that the judgment of the Court of Claims precludes the taxpayers' claim.

The threshold issue is whether a shareholder is foreclosed from deducting as "ordinary and necessary" business expenses, Int.Rev.Code of 1954, § 162; or as "ordinary and necessary expenses . . . for the production of income," Int.Rev.Code of 1954, § 212, sums paid to a corporation, under a contract requiring him to do so, when the sums are to reimburse the corporation for expenses incurred by the corporation in man-

---

1. Some of the parties involved in the transactions described are now deceased and represented in these proceedings; some of the plaintiffs are spouses who joined in the filing of joint returns. For the sake of simplicity I shall refer simply to "the plain-tiffs" or "the taxpayers" to describe these interests.

2. The plaintiffs also protest the disallowance of certain other deductions. These issues involve controverted issues of fact, and are not yet ripe for disposition.

aging property owned by it. The effect of the judgment in the Court of Claims must be considered only if this question is answered adversely to the taxpayers.

■ Both business and non-business expenses incurred to incubate pecuniary gain are deductible only if they are "ordinary and necessary"; generally when a taxpayer pays the debts of someone else, this is not considered an "ordinary" expense. Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Mertens, Law of Federal Income Taxation § 25.12 (1972). The courts have been faced with numerous instances of taxpayer-stockholders attempting to deduct expenses that could properly have been claimed as business expenses by the corporation; these attempts have been uniformly rejected. Strasburger v. C. I. R., 6th Cir. 1964, 327 F.2d 236; Wohl v. United States, 5th Cir. 1959, 267 F.2d 605; Low v. Nunan, 2d Cir. 1946, 154 F.2d 261; H. Wm. Inrig, 1956, 26 T.C. 73; James M. Hawkins, 1953, 20 T.C. 1069; Roy L. Harding, 1970, ¶ 70,179 P–H Memo TC; Tom Coke Connally, 1961, ¶ 61,312 P–H Memo TC. Rev.Rul. 71–36 states:

> Advances made by taxpayer to pay the business expenses of a corporation of which he is the majority shareholder are not deductible by him . . .

There is language in some of these cases indicating that a different result would obtain if the taxpayer had been required to pay the disputed expense. In *Connally, supra,* the court said

> There is no showing that the petitioner or petitioners were *required* by any agreement . . . to make expenditures of the character here involved in behalf of . . . the company. (Emphasis supplied).

In *Hawkins, supra,* the court denied the deduction of traveling expenses claimed by the shareholder.

An expense, to be deductible . . ., must be both ordinary and necessary, and for one business to *voluntarily* pay the expenses of another is not an expenditure ordinary in character. (Emphasis supplied).

And in *Harding, supra,* the court denied the deduction saying

> There is nothing in the record to justify the conclusion that the "understanding," or "agreement" between petitioner and his brother was "tantamount" to a requirement by their employer that they bear the expenses in question.

These dicta should not however be interpreted to mean that a contract with the corporation requiring the individual taxpayer-shareholder to pay the debt will ipso facto allow the taxpayer-shareholder to claim a deduction; the general rule against deduction-shifting should not be susceptible of such easy avoidance. All of the cited cases involved small closely-held corporations with which the controlling stockholder-taxpayer could easily have executed an agreement similar to the one executed here. The mere existence of a contract made without demonstrated and significant economic reason or business necessity should not be a distinguishing factor. It is unnecessary to consider whether, under other circumstances, a contractual obligation undertaken for reasons of economic reality or business necessity might warrant shifting the deduction.[2a]

■ In the present case, the contract to pay the corporation's expenses was an incident of the attempt to shift title and management without shifting income. There was no other reason for, or need of, it. Hence it should not serve to divorce expense from the income that expense produced. To put the conclusion categorically, it is not an ordinary or

---

**2a.** We need not consider whether a contract between the taxpayer and the corporation's creditor would change the result. No such contract was present here. In both *Stras-* *burger* and *Wohl, supra,* the taxpayer was contractually obligated to pay the expenses for which the deduction was claimed; in both cases the deduction was denied.

necessary expense for the Harrisons to pay the business expenses of the corporation in which they owned stock absent some reason to do so more compelling than the terms of a counter letter confected between them and the corporation they controlled.

Therefore, these taxpayers may not claim the deductions in question if the corporation could have claimed them; the expenses are simply not "ordinary" within the meaning of Sections 162 and 212 of the Internal Revenue Code of 1954. Furthermore, the corporation in fact could properly have claimed the expenses; it was allowed a deduction for the costs of managing the property in computing the tax it owed for the years 1960–1963. It is fundamental that one expense may not give rise to two deductions. See, *e. g.*, Int.Rev.Code of 1954, § 642(g).[3]

■ Once this issue is resolved, the government must prevail. The taxpayers do not dispute that these expenses *could* have been deducted by the corporation if that company were a legal entity obligated to comply with the federal income tax law, rather than a straw device. It was that very issue, the existence of Harrison Property Management Co., Inc. as a taxable entity, that was considered by the Court of Claims in litigation involving these very parties[4] and decided adversely to the position here advanced. The doctrine of collateral estoppel[5] therefore precludes the relitigation of whether the corporation exists as an entity which could have claimed the deduction. Accordingly, the government's motion for summary judgment is granted.

3. In some limited circumstances, however, not here applicable, a double deduction is permitted. See Rev.Rul. 71–173, 1971–1 C. B. 204.

4. The plaintiffs originally argued that the Court of Claims litigation involved only the corporation. That suit, however, was

brought in the name of the corporation *and* the individual taxpayers; thus no issue of privity arises.

5. C.I.R. v. Sunnen, 1948, 333 U.S. 591, 68 S. Ct. 715, 92 L.Ed. 898; Oklahoma v. Texas, 1921, 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831.