## EDWIN E. MARKWARDT AND ODELLA G. MARKWARDT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3752-72.     Filed August 28, 1975.

---

*Gerald T. Waters,* for the petitioners.
*John D. Copeland,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioners' Federal income tax:

| Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|
| 1965 _____ | $8,654.42 | 1967 _____ | $39.47 |
| 1966 _____ | 2,150.51 | 1968 _____ | 12,105.09 |

We must decide whether the petitioners sustained a loss as the result of the worthlessness of an alleged covenant not to compete.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Edwin E. and Odella G. Markwardt, are husband and wife, who resided in Grand Prairie, Tex., at the time of filing their petition herein. They filed their joint Federal income tax returns for 1965, 1966, and 1967 with the District Director of Internal Revenue, Dallas, Tex., and for 1968, with the Internal Revenue Service Center, Austin, Tex. Mr. Markwardt will sometimes be referred to as the petitioner.

Prior to 1965, the petitioner was employed as a bookkeeper in an accounting firm in Hurst, Tex. Through his work, he became acquainted with the owners of the Ready-Go Concrete Co. (Ready-Go). He was their bookkeeper for over 6 years and thus became familiar with the ready-mix concrete business. In December 1964, he became general manager of Ready-Go. However, a change in management soon occurred, and as a result, he decided to purchase his own ready-mix concrete business.

In February 1965, the petitioner learned that Top-Mix Concrete, Inc. (Top-Mix or the corporation), might be for sale. Top-Mix was a corporation engaged in the ready-mix concrete business and had plants in Grand Prairie and Euless, Tex. Homer C. Harrell and his wife, Lorene, owned 85 percent of its stock, and the remainder of the stock was owned by Mr. Harrell's son-in-law and daughter, John and Virginia Morgan.

The petitioner contacted Mr. Harrell, who represented all of the shareholders of Top-Mix, to determine whether Top-Mix was

for sale. Mr. Harrell described Top-Mix's business to the petitioner. The corporation's sales volume, profit margin, and the availability of materials were discussed. The petitioner inspected its plants and equipment and was provided with copies of its 1964 Federal corporate income tax return and a balance sheet reflecting the corporation's book value as of January 31, 1965. Two days after his initial meeting with the petitioner, Mr. Harrell set a price of $293,000 for all the stock of Top-Mix, but he agreed to discharge certain corporate liabilities totaling $79,196 as part of the sale.

During the course of their negotiations, Mr. Harrell told the petitioner that he was selling his stock because he intended to get out of the ready-mix concrete business and that the petitioner need not worry about competition from him. As a result, the petitioner expected that Mr. Harrell would not compete with Top-Mix after the business was sold to him. It was important to him that Mr. Harrell agreed not to compete with Top-Mix. However, a written covenant not to compete with Top-Mix (covenant) was never prepared or executed by Mr. Harrell. Furthermore, the petitioner and Mr. Harrell never discussed allocating any portion of the purchase price to a covenant.

About 6 weeks elapsed between the time the petitioner first contacted Mr. Harrell and the time the sale was closed. During this period, the petitioner discussed the proposed transaction with his accountant, who advised him that the purchase price set by Mr. Harrell exceeded the corporation's book value by approximately $131,000. He advised the petitioner that $93,000 could be allocated to the covenant and $38,000 to goodwill, although the accountant did not explain the basis of such an allocation. The petitioner never discussed this allocation with Mr. Harrell or the other shareholders of Top-Mix.

After they had completed their negotiations and had agreed on the terms of the sale, Mr. Harrell suggested that he and the petitioner contact an attorney, who had previously performed legal services for Top-Mix, to consummate the legal formalities. They went to the attorney's office and told him what they wished done. Since they had previously agreed to terms and were in an apparent rush to complete the sale, neither sought the attorney's advice on how to structure the transaction. The attorney prepared the stock transfers necessary to complete the sale, but never drafted a contract of sale. The petitioner and Mr. Harrell

never discussed a covenant with the attorney; thus, he was never requested to draft a written covenant.

On March 15, 1965, the sale was closed at the Grand Prairie State Bank, where the petitioner apparently borrowed a portion of the funds he used to purchase the stock. The petitioner paid $293,000 for all the stock of Top-Mix. Such payment was divided among the shareholders in proportion to their stock ownership.

After the sale, Mr. Harrell and his son-in-law, Mr. Morgan, continued to work for Top-Mix. Mr. Harrell worked for about 6 months before quitting. Mr. Morgan worked slightly longer before being fired. In December 1965, Mr. Harrell reentered the ready-mix concrete business by starting a new plant known as Harrell Concrete, about a mile from the Top-Mix plant and in direct competition with Top-Mix.

The petitioner thereupon sued Mr. Harrell and the other sellers of the Top-Mix stock for breach of an alleged covenant. A jury trial was held in the 162d District Court of Dallas County, Tex. (the District Court), in April 1967, and special issues were submitted to the jury. The jury's findings in response to the special issues (jury's findings) were that Mr. Harrell had promised not to reenter the ready-mix concrete business in competition with Top-Mix or the petitioner when he sold the stock to the petitioner, but that he did not intend to keep that promise when he made it. It also found that the promise was a material inducement to the petitioner which he relied upon. The jury found that the fair market value of the stock sold to the petitioner was $293,000 if Mr. Harrell did not reenter competition with Top-Mix and $210,000 if he did reenter competition. Finally, the jury found that Mr. Harrell's promise not to compete was limited to the area served by Top-Mix and was a reasonable restriction on trade. However, the District Court sustained Mr. Harrell's motion for judgment non obstante veredicto and held that the petitioner was not entitled to damages. The court found that the petitioner had admitted that the covenant was not limited as to time or area and that there-fore the jury's findings could not be sustained. This decision was affirmed on appeal. *Markwardt v. Harrell,* 430 S.W. 2d 1 (Tex. Civ. App. 1968). The petitioner retained his interest in Top-Mix until 1973 when he sold his stock.

After purchasing the Top-Mix stock, the petitioner proceeded to treat most of the assets of Top-Mix as if he had purchased

them instead of having purchased the corporate stock. He purported to lease the assets back to Top-Mix, and a deduction for the rent was taken on the corporate income tax return. He reported the amount paid him as either rental income or as income earned in his sole proprietorship leasing business and claimed a depreciation deduction for the assets on his individual income tax return. The assets were revalued when the petitioner calculated his allowable depreciation; almost every asset was given a basis in excess of book value. In addition, he also claimed an investment credit for the purchase of the assets. Upon audit by the Internal Revenue Service, it was determined that the assets belonged to Top-Mix and not to the petitioner. Thus, the rent paid by Top-Mix to the petitioner was not a deductible business expense of the corporation, and the corporation was not allowed to use the stepped-up bases which the petitioner had assigned to the assets. The depreciation deductions and investment credit were also disallowed to the petitioner. In his petition, he did not contest these changes.

The petitioner did derive some income from the leasing of equipment owned by him. Such equipment had been acquired in transactions not connected with the acquisition of stock of Top-Mix and consisted primarily of dump trucks used to haul materials for Top-Mix and others.

Unlike the other assets of Top-Mix, the alleged covenant was treated as a corporate asset. The petitioner did not purport to lease it to Top-Mix. The corporation apparently amortized it on its Federal income tax return. In 1968, after the District Court's decision was affirmed by the Texas Court of Civil Appeals, Top-Mix claimed a deduction of $83,000 for the loss of the covenant. The Commissioner disallowed such deduction upon audit of Top-Mix's return, apparently because he felt that either no covenant existed or that no loss was allowable since the covenant was oral.

The petitioner then deducted the claimed loss on his 1968 Federal income tax return as a business expense incurred in his equipment rental business. He also filed an Application for Tentative Refund from Carryback of Net Operating Loss or Unused Investment Credit, Form 1045; claiming refunds for the years 1965 through 1967. Although he tentatively allowed the carrybacks and claimed refunds, the Commissioner later determined that the petitioners did not incur a loss in 1968 as a result of the worthlessness of a covenant and that they therefore

incurred no net operating loss in that year; thus, he also dis-allowed the refunds previously made.

OPINION

Section 165(a) of the Internal Revenue Code of 1954 [1] provides that a deduction shall be allowed for any loss sustained during the taxable year which is not compensated for by insurance or otherwise. The regulations provide that in the case of nondepreciable property used in a taxpayer's trade or business or in a transaction entered into for profit, a loss incurred on the sudden termination of the usefulness of the asset in the business or transaction shall be allowed as a deduction under section 165(a) if the asset is permanently abandoned. Sec. 1.165-2(a), Income Tax Regs. In the case of depreciable property used in the taxpayer's trade or business or for the production of income, a loss incurred on the abnormal retirement of the asset is allowable in accordance with similar rules. Sec. 1.167(a)-8, Income Tax Regs.

The petitioner contends that he purchased a covenant from Mr. Harrell and incurred a loss when it was abandoned as useless in 1968. Much of his evidence was offered for the purpose of establishing that when Top-Mix was purchased, Mr. Harrell also agreed to a covenant not to compete and for the purpose of establishing the portion of the purchase price to be allocated to the covenant. For these purposes, the petitioner urged us to consider the findings of the jury to the extent that they were not expressly overruled by the District Court. He argued that from such findings, we should conclude that a covenant did in fact exist and that the value of the covenant was $83,000. Whether, in these circumstances, the jury's findings should be considered in this case, and the weight to be given them, present questions to which the answers are not settled. Cf. 4 Wigmore, Evidence, sec. 1346a (Chadbourn rev. 1972); 5 Wigmore, Evidence, sec. 1671a (Chadbourn rev. 1974). However, we need not attempt to settle the matter in this case, for we are convinced that if a covenant existed, it belonged to Top-Mix, and consequently, any loss sustained as a result of the breach of such a covenant was sustained by Top-Mix. Hence, we need not decide whether there actually was an agreement as to a covenant or the portion of the price allocable to such covenant.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect for the years at issue.

Losses are deductible only by the taxpayer sustaining them; they are personal to the taxpayer and cannot be transferred to another. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435 (1934). Moreover, the burden of proving that he sustained such a loss is on the taxpayer. *Burnet v. Houston,* 283 U.S. 223 (1931).

Usually, payments made by a shareholder to his corporation or a third person for the benefit of the corporation are neither deductible business expenses of the shareholder nor expenses incurred for the production of income. *Wohl v. United States,* 267 F. 2d 605 (5th Cir. 1959), cert. denied 361 U.S. 931 (1960); *J. K. Downer,* 48 T.C. 86, 90 (1967); *Bert B. Rand,* 35 T.C. 956 (1961); *Harry Kahn,* 26 T.C. 273 (1956); *H. William Ihrig,* 26 T.C. 73 (1956); *Jacob M. Kaplan,* 21 T.C. 134 (1953); *Eskimo Pie Corp.,* 4 T.C. 669, 676 (1945), affd. per curiam 153 F. 2d 301 (3d Cir. 1946). Such payments are treated as contributions to capital by the shareholder and must be regarded as an additional cost of his stock. See *Wohl v. United States, supra; J. K. Downer, supra; Irving S. Sokol,* 25 T.C. 1134 (1956); *Eskimo Pie Corp., supra.* A deduction is allowable only if the expenditures are made to protect or promote the shareholder's own trade or business. See *James O. Gould,* 64 T.C. 132 (1975); *James L. Lohrke,* 48 T.C. 679 (1967). However, the trade or business of the corporation must be considered separately from the trade or business of the shareholders. See *Deputy v. DuPont,* 308 U.S. 488 (1940); *Burnet v. Clark,* 287 U.S. 410 (1932); *Dalton v. Bowers,* 287 U.S. 404 (1932); *Phil L. Hudson,* 31 T.C. 574, 583-584 (1958), and the cases cited therein.

While the deduction sought here is for a loss and not an expense of the business, the principle is the same. The petitioner spent money to acquire the Top-Mix business, and he claims that part of that money was spent to acquire a covenant not to compete. However, the primary beneficiary of any such covenant would have been Top-Mix. If any loss was sustained when Mr. Harrell started his new ready-mix concrete business, it was the business of Top-Mix that suffered directly from such competition. The only effect on the petitioner was as a shareholder of Top-Mix. For these reasons, we find that the primary beneficiary of any covenant was Top-Mix and that accordingly any loss resulting from the breach of the covenant was sustained by Top-Mix. Any amount of the purchase price allocable to the acquisition of a covenant not to compete was in effect a contribu-

tion by the petitioner to the capital of Top-Mix and any such amount was an additional cost of acquiring his stock in Top-Mix. Cf. *J. Meredith Siple*, 54 T.C. 1 (1970); *Estate of Evelyn McGlothlin*, 44 T.C. 611 (1965), affd. 370 F. 2d 729 (5th Cir. 1967); *Irving S. Sokol, supra.*

Our conclusion that the covenant was acquired as an asset of Top-Mix and not the petitioner is supported by the manner in which the covenant has been treated by him and the corporation. Top-Mix claimed amortization deductions for the value of the covenant on its Federal income tax returns. When the covenant became worthless in 1968, Top-Mix first deducted the loss. After an audit, the Commissioner disallowed the deductions claimed by Top-Mix apparently because he believed that no covenant ever existed. Only then did the petitioner claim a loss deduction with respect to the covenant on his individual Federal income tax return. Furthermore, when the petitioner originally acquired the stock of Top-Mix, he erroneously treated many of the assets of Top-Mix as if he personally owned them. Yet, the covenant was never treated in this manner; it was always regarded as a corporate asset and not an asset owned by the petitioner. These circumstances show that the petitioner considered the covenant to be a corporate asset when he purchased his stock in Top-Mix.

In his brief, the petitioner argues that the covenant was acquired to protect his own leasing business. He argues that since the covenant protected his largest customer, Top-Mix, it was used in his own business. However, he has failed to provide any evidentiary basis for his argument. His leasing business consisted primarily of several dump trucks which he rented to various customers including Top-Mix. He did not prove that his business was economically dependent upon Top-Mix. In fact, he did not even establish that Top-Mix was a substantial customer of his business. Thus, he has failed to show that the covenant was acquired solely for the benefit of his own business rather than for the benefit of Top-Mix.

The covenant was an asset of Top-Mix which became worthless in 1968. The petitioner may not deduct losses incurred by his solely owned corporation. Cf. *Ernest H. Weigman*, 47 T.C. 596 (1967), affd. per curiam 400 F. 2d 584 (9th Cir. 1968). While the loss of the covenant may have caused the value of his stock in Top-Mix to decline, no deduction is allowable for such shrinkage

in value. See sec. 1.165-4, Income Tax Regs. Any loss incurred by the petitioner is only deductible in 1973 when the stock was sold.

In his brief, the petitioner, for the first time, argues that he is entitled to a casualty loss deduction under section 165(c)(3) as a result of his purchase from Mr. Harrell. According to such argument, Mr. Harrell committed the criminal offense of "theft by false pretext" by inducing the petitioner to purchase a covenant not to compete which Mr. Harrell never intended to honor. The Commissioner objects to this argument since the issue was not raised by the pleadings.

This Court has held on numerous occasions that it will not consider issues which have not been pleaded. See, e.g., *Estate of William Mandels*, 64 T.C. 61 (1975); *Estate of Akos Anthony Horvath*, 59 T.C. 551, 556 (1973); *J. William Frentz*, 44 T.C. 485, 490-491 (1965), affd. by order 375 F. 2d 662 (6th Cir. 1967). Whether an issue has been properly raised depends upon whether the opposing party has been given fair notice of the matter in controversy. Rule 31(a), Tax Court Rules of Practice and Procedure. We must determine whether the Commissioner was surprised and put at a disadvantage when the casualty loss issue was raised. *Estate of Akos Anthony Horvath*, 59 T.C. at 555.

In their petition, the petitioners alleged that:

The Commissioner erred in determining that Petitioners did not sustain a loss in 1968 for Federal income tax purposes in the amount of $83,000.00, such loss arising from the worthlessness in 1968 of a covenant not to compete which Petitioners acquired in 1965 upon the purchase of the stock of Top Mix Concrete, Inc.

Thus, the claim in the petition was based on the acquisition of a covenant that became worthless. In neither the petitioner's opening statement, nor during the trial, was the Commissioner informed that the petitioner also claimed to have been defrauded by Mr. Harrell. Furthermore, the loss was claimed on Schedule C of his individual Federal income tax return as a deduction incurred in his equipment rental business, without subtracting the $100 limitation of section 165(c)(3), thus providing no notice of the theft loss issue to the Commissioner. These circumstances show that the petitioner never gave notice of such issue to the Commissioner; accordingly, we will not consider it.

The petitioner argues that the Commissioner was made aware of the theft issue by the inclusion of the jury's findings in the

stipulation of facts. However, the record indicates that precisely the opposite is true. The Commissioner objected to the introduction of the jury's findings into evidence alleging that they were irrelevant to the issues to be tried. The petitioner argued that they were relevant to show the contract he had with Mr. Harrell; he did not assert that the findings established that Mr. Harrell defrauded him. In the light of these circumstances, the inclusion of the jury's findings in the stipulation of facts did not give notice of the theft issue.

In the alternative, the petitioner argues that he should be allowed to amend the pleadings to conform to the proof offered at trial.[2] Rule 41(b), Tax Court Rules of Practice and Procedure, permits an amendment of the pleadings to conform them to the evidence when issues not previously raised were tried with the express or implied consent of the parties. However, since the Commissioner was not aware of the theft issue during the trial, he cannot be held to have expressly or impliedly consented to the trial of such issue. Furthermore, contrary to the petitioner's assertions in his brief, an amendment of the pleadings would require a retrial of this case to allow the Commissioner an opportunity to present evidence on this issue. To provide a further trial would be contrary to the established policy of this Court to try all issues raised in a case in one proceeding and to avoid piecemeal and protracted litigation. *Robin Haft Trust,* 62 T.C. 145, 147 (1974), affd. on this issue 510 F. 2d 43 (1st Cir. 1975); *Second Carey Trust,* 41 B.T.A. 800 (1940), affd. 126 F. 2d 526 (D.C. Cir. 1942), cert. denied 317 U.S. 642 (1942). A second trial is not ordinarily granted to consider a new theory which could and should have been presented in the first trial. *Pierce Oil Corp.,* 30 B.T.A. 469 (1934); cf. *Robin Haft Trust, supra.* The petitioner offers no reasons for his failure to raise this issue timely so we conclude that his motion must be denied.

Even if we were to consider the theft issue, there is not sufficient evidence before us to establish such a deduction. In part, the petitioner relies upon the jury's findings with respect to the theft issue, but even if we were to take into consideration those findings, they, together with all the other evidence, are

---

[2] The petitioner asserts that such an amendment is permitted pursuant to Rule 17, Tax Court Rules of Practice. However, new rules have been adopted for all proceedings after Dec. 31, 1973. The apparent basis of the petitioner's motion is Rule 41(b)(1), Tax Court Rules of Practice and Procedure.

insufficient to establish that at the time of the sale, Mr. Harrell made a promise which he did not intend to keep.

*Decision will be entered for the respondent.*