T.C. Memo. 1996-141

UNITED STATES TAX COURT

JOSEPH FRANCIS CUNNINGHAM, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22176-93.                    Filed March 20, 1996.

Kathleen A. Chapman, for petitioner.

Aretha Jones, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code for the years in issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's 1987, 1988, and 1989 Federal income taxes in the amounts of $3,437, $1,093, and $4,634, respectively. The issue for decision is whether the limitations imposed by section 280A(c)(5) are applicable to business expense deductions claimed by petitioner's wholly owned S corporation in connection with the operation of a commercial art gallery located in the building where petitioner resided. The resolution of this issue turns upon whether the portions of the building in which the art gallery was situated are part of, or appurtenant to, the dwelling unit in which petitioner resided.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Alexandria, Virginia.

During the years in issue, petitioner was employed on a full-time basis as an attorney. On December 4, 1986, petitioner purchased a building located at 229 North Royal Street (the building) in the Old Town section of Alexandria, Virginia. The building is located on the northeast corner at the intersection of North Royal and Queen Streets in a predominantly residential neighborhood composed mostly of townhouses. It is attached to townhouses on North Royal and Queen Streets, although architecturally distinct in appearance from the other townhouses

in the area.  Petitioner purchased the building with the intent of establishing a commercial art gallery there.  Although there is conflicting evidence on the point, it appears that at the time of purchase, petitioner, who was engaged to be married and was living in a rented apartment, also intended to use a portion of the building as a residence for himself and his future spouse.

The building was zoned residential.  However, the previous owners obtained special use permits allowing them to operate various businesses, including an antique furniture shop, at that location.  Petitioner was required to obtain a special use permit so that the art gallery could be located and operated in the building.

The building consists of three levels, including a basement (below street level), ground floor (street level), and upper floor.  Petitioner anticipated that the basement and ground floor would provide sufficient space to locate and operate the art gallery.  The upper level was large enough to use as a residence and contained two full bathrooms, although it had not been finished or equipped for residential use at the time that petitioner purchased the building.  Petitioner began using the upper level as his residence in August of 1987 after adding new flooring, a complete kitchen, and walls and doors that defined separate living and bedroom areas.

Because of its prior use as an antique shop, the street level was already well suited for use as an art gallery when the

building was acquired by petitioner and required no renovations. It was composed of three areas, including one large room in front (the North Royal Street side), a foyer with a staircase in the back (with an exit to Queen Street), and a half bathroom. The large room in the front was used to display the art work.

The basement consisted of a landing for the staircase, a laundry room, a half bath, and two separate rooms that at times were used as additional display areas. There was also a kitchenette located in the basement that included a refrigerator, sink, and hot plate.

The building has two street level entrances. One is on North Royal Street and leads to the large room used as the primary exhibition area. The other entrance is on Queen Street and leads to the foyer behind the large room. The U.S. Postal Service recognizes separate addresses for the building, one on North Royal Street and one on Queen Street, and delivers mail to mailboxes at each location. Customers of the art gallery were expected to use the North Royal Street entrance and, when viewed from that street, this was the entrance a potential customer would assume leads to the art gallery. This entrance remained unlocked during gallery business hours. The Queen Street entrance leads to the foyer where the staircase is located. This door remained locked and from the street did not appear necessarily to be connected to the gallery. Each entrance

provides access to all areas of the building including the areas used for the art gallery as well as for petitioner's residence.

There is no door at the bottom or top of the stairs leading to petitioner's residence preventing access to the residence from the rest of the building.  Although petitioner placed a "private" sign on the stairway leading up to his residence, there are no permanent dividing walls or partitions separating the residence from the art gallery.

The property upon which the building is located is subject to a single deed.  Similarly, there is a single real estate tax assessment for the property and one sewage and water bill.  There were separate telephone lines for the art gallery and petitioner's residence.  Electricity and natural gas usage were also metered and billed separately.

Petitioner incorporated FOTA Gallery, Inc. (FOTA) in 1986. FOTA's purpose was to own and operate the art gallery, which it did during the years in issue.  Without a lease, or any other formalities, it appears that petitioner allowed FOTA to use the street and basement levels of the building for the operation of the art gallery.[2]  FOTA held its first art show in 1987.

---

[2]A real estate settlement statement introduced into evidence as one of respondent's exhibits indicates that FOTA, rather than petitioner, was the purchaser of the building.  Petitioner signed this settlement statement on behalf of FOTA as president of the corporation.  Contrary to the settlement statement, the stipulation of facts included the following paragraph:  "The petitioner purchased a three level structure. * * *  The structure was purchased by petitioner on December 4, 1986."

For the years 1987, 1988, and 1989, FOTA filed its Federal income tax returns in accordance with an election made pursuant to section 1362(a), commonly referred to as an S election. For the years in issue, petitioner's individual Federal income tax returns reflected petitioner's distributive share of the losses incurred by FOTA in the amounts of $45,035, $23,180, and $63,512, respectively. Although the record is incomplete as to the circumstances surrounding the filing of FOTA's Federal income tax returns for the years in issue and respondent's examination of those returns, it appears that respondent made adjustments to the amount of losses reported by FOTA for the years 1987, 1988, and 1989. In a portion of FOTA's examination report included with the notice of deficiency issued to petitioner, respondent provided the following explanation for certain of the adjustments:[3]

> The deductions for business use of your dwelling unit are limited to the gross income from the business activity after subtracting the business part of your real estate taxes, mortgage interest, and expenditures required for the activity but not allocable to the use of the unit itself.

[emphasis added]. The Court was invited to ignore the exhibit when this inconsistency was called to the attention of the parties in a posttrial conference. Because the technical ownership of the building has no impact on the outcome of the issue under consideration, we honor the stipulation and proceed as though petitioner was, in fact, the owner of the building.

[3]Certain allocations and other adjustments were made by respondent in connection with her examinations of FOTA and petitioner. Petitioner only contests the adjustments that depend upon the resolution of the issue disputed in this proceeding.

Consistent with her examinations of FOTA, respondent reduced the losses claimed by petitioner from FOTA by $17,101 and $21,891 for the years 1987 and 1989, respectively, and increased the losses claimed by $24,070 for the year 1988.

OPINION

Section 162(a) generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable yearin carrying on a trade or business. Section 280A(a) provides that in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under chapter 1 (Normal Taxes and Surtaxes) shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. The term "dwelling unit" includes a house, apartment, condominium, or similar property, and all structures or other property appurtenant to such dwelling unit. Sec. 280A(f)(1).

Section 280A(c)(1) provides an exception to section 280A(a) stating that subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. Sec. 280A(c)(1)(A).[4] Section 280A(c)(5) provides a limitation on

---

[4]In her brief, respondent raised an argument that petitioner failed to satisfy the "exclusive use" test with respect to the basement level of the building. The argument is inconsistent with allocations expressly and implicitly made in respondent's

the deductions that may be allowed under section 280A(c)(1)(A). Specifically, section 280A(c)(5) provides that the deductions allowed shall not exceed the excess of the gross income derived from the trade or business use for the taxable year, over the sum of certain deductions allocable to such income.[5]

The parties agree that at least the top floor of the building which petitioner used as a residence constitutes a dwelling unit as defined in section 280A(f)(1)(A) and that petitioner used such dwelling unit as his residence during the relevant periods.  Petitioner argues, however, that section 280A, and particularly the limitations on deductions imposed by section 280(c)(5), are not applicable because only the upper level of the building constitutes a dwelling unit.  According to petitioner, the basement and street levels, which were used for art gallery business purposes, should not be considered part of the dwelling unit, or appurtenant to it.  Respondent argues the entire building constitutes the dwelling unit.  In support of her argument respondent relies heavily upon the fact that physically there is unrestricted access to all parts of the building from any location within the building.

---

examination of FOTA and reflected in certain adjustments made to FOTA's income for the years in issue.  Because the argument was first made in her brief, it will not be considered.  See Markwardt v. Commissioner, 64 T.C. 989 (1975).

[5]Petitioner agrees that if the provisions of sec. 280A(c)(5) are applicable, respondent's adjustments to the losses reported by FOTA for the years in issue are correct.

We agree with respondent that all floors of the building constitute petitioner's "dwelling unit". Clearly, the upper level of the building, which petitioner utilized as his residence, is a dwelling unit. The building contains no permanent partitions or walls that physically or functionally separate the area used by the art gallery from the areas used as petitioner's residence. Various photographs introduced into evidence depicting different interior areas of the building reveal nothing that suggests that the three levels of the building were anything other than one integrated unit. Customers who entered the art gallery had free access to the foyer where the stairway to the basement was located. Allowing customers to have access to the foyer area also gave them access to the building's upper level, or petitioner's residence. Petitioner had to pass through the foyer in order to gain access to his residence. He had to use the same stairway that customers used when he descended to the laundry room in the basement.

We see no meaningful distinction between the facts of this case and those involved in Burkhart v. Commissioner, T.C. Memo. 1989-417. In that case the taxpayer used the basement portion of his residence exclusively for business purposes. In deciding that the entire structure constituted the dwelling unit the Court stated:

> The basement became both a physical and functional part of the building. * * * The costs of maintaining the basement in terms of taxes, interest, utilities and

insurance were integrated with the costs of maintaining the rest of the building. The basement became part and parcel--a "portion," in the language of section 280A(c)(1) and (5)--of petitioners' dwelling unit. * * * [Burkhart v. Commissioner, supra.]

In the instant case, the basement and street levels were certainly physical parts of the building, and, even if we only take into account the necessary usage of the stairway, those levels were functional parts as well. Accordingly, consistent with our reasoning in the Burkhart case, we find that the entire building constitutes petitioner's dwelling unit as that term is used in section 280A.

Because we find that the entire building constitutes the petitioner's dwelling unit, we need not address the question of whether the basement and street levels were appurtenant to the upper level.

Because the areas used as an art gallery were part of petitioner's dwelling unit, the deductions attributable to the business use of the building are subject to the limitations set forth in section 280A(c)(5). Accordingly, respondent's determination in this regard is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.