WHITNEY E. and EVA G. TARUTIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tarutis v. Commissioner
Docket No. 4807-80.
United States Tax Court
T.C. Memo 1982-313; 1982 Tax Ct. Memo LEXIS 433; 44 T.C.M. (CCH) 48; T.C.M. (RIA) 82313; June 7, 1982. *433 During 1976 and 1977, P owned and operated a farm with respect to which he never reported a profit. He also owned a tavern and a beauty shop and engaged in the practice of law. Held, the operation of the farm was an "activity * * * not engaged in for profit" within the meaning of sec. 183, I.R.C. 1954. Held, further, P may deduct expenses allocable to the tavern as it was used in a trade or business. Held, further, P may not deduct expenses allocable to the beauty shop as such property was not used in a trade or business or held for the production of income. Whitney E. Tarutis, pro se. Mark A. Pridgeon, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioners' Federal income taxes of $ 1,117.00 for 1976 and $ 4,187.00 for 1977. The issues for decision are: (1) Whether the operation of the petitioners' farm was an "activity * * * not engaged in for profit" within the meaning of section 183(a) of the Internal Revenue Code of 1954[1] *434 ; and (2) whether the tavern and beauty shop owned by them were used in a trade or business or held for the production of income. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Whitney E. and Eva G. Tarutis, husband and wife, resided in Bemidji, Minn., at the time they filed their petition in this case. They filed their joint Federal income tax returns for 1976 and 1977 with the Internal Revenue Service. Mr. Tarutis will sometimes be referred to as the petitioner. Mr. Tarutis grew up on a dairy farm in Campbellsport, Wis., where his father raised Holstein cattle. In 1939, he became certified to practice law and worked as a lawyer in Chicago, Ill., until he was drafted into military service for World War II. While serving overseas, he lost all of his hearing in both ears. Thereafter, he returned to the United States and received treatment for such disability, and eventually, he regained some hearing in his right ear. Mr. Tarutis decided that as a result of his disability, he could not resume the full-time practice of law. Thus, sometime around 1946, he and his wife purchased a 160-acre farm in Bemidji, Minn., at a cost of $ 9,500. Over the years, they purchased additional land, *435 and in 1977, they owned a total of 600 acres. Approximately half of such acres were cultivated; farm products were grown on 40 to 80 acres, and hay was grown on the remainder. During 1977, they owned between 10 and 20 head of cattle; such cattle were not held for resale. Mr. Tarutis worked on the farm, and much of the family's sustenance was obtained from the farm. In over 30 years, the petitioners have never reported an annual profit from the operation of their farm. On their joint Federal income tax returns for 1974 through 1977, they reported the following information relating to their farm: 1974
1975
Operating Income
Sales
Crops
Livestock
$ 1,359.36
$ 1,201.37
Manure
Others
3.20
Total sales
$ 1,362.56 $ 1,201.37 Other income [2] *436 509.81 [3] 2,354.64 Total
$ 1,872.37 $ 3,556.01 Less: Taxes
$ 1,380.98
$ 1,640.08
Other operating
expenses
13,023.59
7,468.50
Depreciation
8,560.87
7,650.86
Total expenses
$ 22,965.44 $ 16,759.44 Net loss
($ 21,093.07)
($ 13,203.43)
1976
1977
Operating Income
Sales
Crops
Livestock
$ 2,811.87
Manure
110.00
Others
Total sales
$ 2,921.87 Other income [2]
$ 2,134.06 1,547.37 Total
$ 2,134.06 $ 4,469.24 Less: Taxes
$ 1,743.76
$ 1,763.30
Other operating
expenses
11,566.47
15,785.51
Depreciation
8,889.75
9,242.20
Total expenses
$ 22,199.98 $ 26,791.01 Net loss
($ 20,065.92)
($ 22,321.77)
On their returns, the petitioners also reported farm losses of $ 23,161.28 for 1971, $ 19,099.24 for 1972, $ 21,102.24 for 1973, $ 21,878.12 for 1978, and $ 15,442.11 for 1979. In early 1978, Dolan Bridgman, a revenue agent, visited the Tarutis property on two occasions in connection with an examination of the petitioners' returns for 1976 and 1977. Mr. Bridgman interviewed Mr. Tarutis and was shown the farm records. Such records consisted primarily of receipts and cancelled checks and were stored in a number of boxes. There was no categorization of receipts or expenses in any organized manner. Mr. Tarutis maintained no ledgers or other books for income and expenses; he believed that to do so would be too time consuming. In 1976 and 1977, the petitioners owned a tavern in Cass Lake, Minn. They had purchased the tavern in 1974 for the purpose of investment and development. After the petitioners had made a number of improvements to the tavern, their son operated it for some time in 1975. However, the tavern was closed *437 in that year, and since such time, the property has not been used. Some of the bar equipment has been removed, and no income was reported from the property for 1976 and 1977. During those years, the petitioners let it be known that the property was available for rent, and they discussed the possibility of renting the property with a number of persons, although none of such discussions led to a lease of the property and although the petitioners incurred no expenses in attempting to rent the property. In 1970, Mrs. Tarutis began a study of cosmetology to increase the family's income. At such time, she opened a small beauty shop on the Tarutis farm. In 1975, the petitioners purchased property in Kennedy, Minn., so that one of their daughters could operate a beauty shop there. The daughter and her husband operated such business, together with a laundromat, until they moved to Arizona in 1976. During the period in which their daughter ran the shop, Mrs. Tarutis traveled to Kennedy on occasion; but after the daughter left, Mrs. Tarutis did not wish to make the trip to Kennedy to operate the shop, and it was closed. Mr. Tarutis had some discussions concerning the possibility of renting *438 or selling the Kennedy property, but he decided to keep it in order to be able to offer it to his daughter should she return to the area. In time, Mr. Tarutis resumed the practice of law, and he carried on such practice in an office on his farm. On the Federal income tax returns, he reported the following income from his practice of law and from other sources: 1974
1975
1976
1977
Legal income
$ 13,280.34
$ 4,236.96
$ 5,381.59
$ 16,471.03
Interest
1,127.39
1,364.49
1,790.90
2.474.50
Rents
348.68
871.77
366.75
1,780.49
As a disabled veteran, Mr. Tarutis also received $ 600 per month from the Government. On their Federal income tax returns, the petitioners deducted farm losses of $ 20,065.92 in 1976 and $ 22,321.77 in 1977. In addition, they deducted depreciation and taxes relating to their tavern and depreciation and fuel oil expenses relating to their beauty shop. In his notice of deficiency, the Commissioner disallowed the deduction for farm losses on the ground that the farming was not engaged in for profit within the meaning of section 183. He also denied the deductions relating to the tavern and the beauty shop on the ground that, in 1976 and 1977, such properties were not used in a trade or business *439 or were not held for the production of income. He took the position that the taxes on the tavern for 1977 were not deductible under section 164 because the petitioners did not itemize their deductions. OPINION The first issue for decision is whether the operation of the Tarutis farm was an "activity * * * not engaged in for profit" within the meaning of section 183(a). Section 183(a) provides the general rule that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit shall be allowed. Section 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as follows: (c) Activity Not Engaged in for Profit Defined.-- For *440 purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Furthermore, section 183(d) provides the presumption that an activity is engaged in for profit if for any 2 of 5 consecutive taxable years, the gross income derived from the activity exceeds the deductions attributable to such activity. Because the Tarutis farm has never produced a profit, such presumption is not in effect in this case. The test for determining whether an individual is carrying on a trade or business so that his expenses are deductible under section 162 is whether the individual's primary pupose and intention in engaging in the activity is to make a profit. Golanty v. Commissioner,72 T.C. 411, 425 (1979), affd. in an unpub. opinion 647 F. 2d 170 (9th Cir. 1981); Allen v. Commissioner,72 T.C. 28, 33 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F. 2d 578 (2d Cir. 1980). The expectation of profit need not be reasonable; it is sufficient if there is "an actual and honest profit objective." Sec. 1.183-2(a), Income Tax Regs.; *441 Dreicer v. Commissioner, 78 T.C.    ,     (April 19, 1981) (slip opinion at 6); Lemmen v. Commissioner,77 T.C. 1326 (1981); Golanty v. Commissioner,supra at 425-426. The issue of whether there is the requisite intention to make a profit is one of fact to be resolved on the basis of all the surrounding facts and circumstances of the case. Churchman v. Commissioner,68 T.C. 696, 701 (1977). The burden of proving such intent is on the petitioners. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); Boyer v. Commissioner,69 T.C. 521, 537 (1977); Johnson v. Commissioner,59 T.C. 791, 813 (1973), affd. 495 F. 2d 1079 (6th Cir. 1974). Section 1.183-2(b), Income Tax Regs., sets forth some of the relevant factors, derived principally from prior case law, which are to be considered in determining whether an activity is engaged in for profit. Allen v. Commissioner,72 T.C. at 34; Boyer v. Commissioner,69 T.C. at 537; Benz v. Commissioner,63 T.C. 375, 382-383 (1974). Such factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the *442 taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Although no one factor is determinative of the taxpayer's intention to make a profit ( section 1.183-2(b), Income Tax Regs.), a record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention. Sec. 1.183-2(b)(6), Income Tax Regs.; Jasionowski v. Commissioner,66 T.C. 312, 322 (1976); Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F. 2d 252 (2d Cir. 1967); V.H. Monette & Co. v. Commissioner,45 T.C. 15, 47 (1965), affd. per curiam sub nom. Monette v. Commissioner,374 F. 2d 116 (4th Cir. 1967). Losses in some years are not necessarily inconsistent with an intention to make a profit, but "the goal must be to realize *443 a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years." Bessenyey v. Commissioner,45 T.C. at 274. In the present case, the Tarutis farm had a long history of losses, and the record contains no indication that a profit could be expected from its operation. In over 30 years of operation, the petitioners never reported a profit from the operation of their farm. In the years 1971 through 1979, the years for which we have specific information, they sustained losses ranging from $ 13,203.43 to $ 23,161.28 and averaging $ 19,707.46. In the years 1974 through 1977, the gross income received from the farming operation each year ranged from $ 1,872.37 to $ 4,469.24 and averaged $ 3,007.92. Thus, compared to the losses, the income was negligible, and there were no trends indicating that the losses were being reduced or that the income was being increased. Moreover, despite the substantial and repeated losses, the petitioners failed to show that they have taken any steps to reduce the losses. The business records of the farm were not organized so as *444 to identify the reasons for the continued losses, and Mr. Tarutis furnished no evidence as to any attempts to discover such reasons or to change his practices so as to produce profits. On this record, the petitioners have completely failed to prove that they had an honest objective of making a profit from the operation of their farm. The petitioners maintain that their farm was earning a profit through the appreciation in its value. In support of this argument, Mr. Tarutis testified that he and his wife paid $ 9,500 for the first 160 acres of their farm, but he offered no evidence as to the cost of the remaining land. He also testified that in his opinion, the farm was worth $ 1,000 an acre at the time of the trial. [4] *445 Even if we accept Mr. Tarutis' statement as to the value of the farm, we still lack evidence as to the gain that could be expected from a sale of the farm since we do not know its total cost or basis. Under such circumstances, we are unable to determine whether the appreciation in value of the farm would offset the substantial losses sustained over many years of operation. Furthermore, in considering whether losses sustained in the operation of a farm may be offset by appreciation in the value of the land, section 1.183-2(b)(4), Income Tax Regs., declares: (4) Expectation that assets used in activity may appreciate in value. The term "profit" encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result *446 when appreciation in the value of land used in the activity is realized since income from the activity together with the appreciation of land will exceed expenses of operation. See, however, paragraph (d) of § 1.183-1 for definition of an activity in this connection. Paragraph (d) of section 1.183-1 defines what constitutes an activity for purposes of section 183 and states in relevant part: Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than those directly attributable to the holding of the land such as interest on a mortgage secured by the land, annual property taxes attributable to the land and improvements, and depreciation *447 of improvements to the land). [Emphasis added.] The petitioners reported total gross income from the farming operation of $ 2,134.06 in 1976 and $ 4,469.24 in 1977. They reported total expenses from the farming operation to be $ 22,199.98 in 1976 and $ 26,791.01 in 1977. If we treat all the depreciation and taxes as attributable to maintaining the land and the improvements thereon and subtract such amounts from the total expenses, the farming operation resulted in losses of $ 9,432.41 in 1976 and $ 11,316.27 in 1977. In fact, some of the depreciation was attributable to the farm equipment. In view of these circumstances, carrying on the farm operation did not assist in maintaining the land, and if the petitioners' objective was to realize a profit from the appreciation in the value of the land, they could have better realized such objective by discontinuing the farming operation. Certainly, the expected profit from the sale of the land did not warrant the continuation of the grossly unprofitable farming operation. In summary, the petitioners have failed to present any evidence showing that they had an honest objective of making a profit from the farming operation. They derived *448 their sustenance from the farm, and they received income from their other activities--the practice of law, the cosmetology business, Mr. Tarutis' Government benefits, and other sources. The continued substantial losses from the farm operation convinces us that the petitioners did not have an actual and honest objective of making a profit, and accordingly, we hold that they are not entitled to deduct their farm losses. The second issue is whether the tavern or beauty shop was used in a trade or business or held for the production of income. Section 167(a) allows a deduction for: a reasonable allowance for the exhaustion, wear and tear * * *-- (1) of property used in the trade or business, or (2) of property held for the production of income. Section 162(a) allows a deduction for "the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." The petitioners have the burden of proving that they are entitled to any of such deductions. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); Mitchell v. Commissioner,47 T.C. 120 (1966). We are satisfied that the tavern was used in a trade or business in 1976 *449 and 1977. Initially, the property was acquired to operate a tavern, and the petitioners spent substantial time and effort in preparing the property for such operation. It was actually operated as a tavern in 1975, and although that business was not carried on in 1976 and 1977, Mr. Tarutis testified that he did attempt to sell or lease the property in those years. His attempts were made by "word of mouth" advertising, but under the circumstances, that method was appropriate. Frost v. United States, an unreported case ( D. Colo. 1969, 1969-2 U.S.T.C. par. 9468, 24 A.F.T.R. 2d 69-5209); compare Philbin v. Commissioner,26 T.C. 1159, 1165 (1956). The fact that the tavern was not actually used in 1976 and 1977 does not necessarily deprive the petitioners of a deduction. See P. Dougherty Co. v. Commissioner,5 T.C. 791, 795 (1945), affd. 159 F. 2d 269 (4th Cir. 1946); Kittredge v. Commissioner,88 F. 2d 632 (2d Cir. 1937), affg. an order of this Court; see also Kruse v. Commissioner,29 T.C. 463 (1957); Wright v. Commissioner,9 T.C. 173 (1947). Because the petitioners did attempt to rent or sell the property, we find that the property was used in a trade or business in those years. *450 Accordingly, we hold that they are entitled to deduct the depreciation and taxes attributable to such property under sections 167 and 162. See King v. Commissioner,189 F. 2d 122 (5th Cir. 1951), affg. a Memorandum Opinion of this Court. We cannot reach the same conclusion with respect to the beauty shop. Even though the petitioners were the owners of the property, it is unclear whether it was ever used in a trade or business owned by them. Mr. tarutis testified that he purchased such property to establish a beauty shop for his daughter, and although Mrs. Tarutis occasionally went to such shop while the daughter was there, the business was closed after the daughter departed. Thus, on this evidence, the business may have belonged to the daughter. Moreover, Mr. Tarutis' testimony regarding his activities in 1976 and 1977 was confusing. At one point, he claimed that he was attempting to lease the property, but at another point, he stated that he was holding the property to see if the daughter might return from Arizona. On such record, we must conclude that the petitioners failed to prove that in 1976 and 1977 they were holding the beauty shop for the production of income. Accordingly, *451 we hold that they are not entitled to the deductions relating to the beauty shop. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976 and 1977.
2. Such income consists of Agricultural Program payments, Federal gas tax credit, State gas tax refund, and other receipts. 3. Includes $ 1,850 from sale of an easement.↩
4. In their brief, the petitioners offered additional evidence concerning the value of the farm and requested a further trial, if necessary, to present such evidence. Obviously, the petitioners cannot present evidence in their brief (Rule 143(b), Tax Court Rules of Practice and Procedure; Evans v. Commissioner,48 T.C. 704, 709 (1967), affd. 413 F. 2d 1047 (9th Cir. 1969)), and the Court does not generally provide the petitioners with a further trial to present evidence which could have been offered at the initial trial ( Haft Trust v. Commissioner,62 T.C. 145 (1974), affd. on this issue 510 F. 2d 43 (1st Cir. 1975); see Second Carey Trust v. Commissioner,41 B.T.A. 800, 807-808 (1940), affd. 126 F. 2d 526↩ (D.C. Cir. 1942)).