BARON SHOPSIN and BARBRO SHOPSIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shopsin v. Commissioner
Docket No. 29109-82.
United States Tax Court
T.C. Memo 1984-151; 1984 Tax Ct. Memo LEXIS 522; 47 T.C.M. (CCH) 1365; T.C.M. (RIA) 84151; March 27, 1984. *522 The petition in this case was filed and signed by petitioners' accountant. On March 31, 1983 the Court entered a stipulated decision in the case executed by petitioners and respondent. Petitioners subsequently claimed they did not authorize or ratify the filing of the petition and filed a motion to vacate the stipulated decision for lack of jurisdiction. Held, the evidence establishes that petitioners' accountant acted as petitioners' authorized agent in filing the petition. Therefore, the motion to vacate the stipulated decision for lack of jurisdiction will be denied. Held further, the Court will not consider petitioners' allegation that the statute of limitations bars the assessment of taxes for the taxable years 1977 and 1978 since this issue was not raised in the pleadings. Stephen L. Mason, for the petitioners. Lewis R. Mandel, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Judge: This matter is before the Court on petitioners' motion to vacate the stipulated decision in this case, pursuant to Rule 162, Tax Court Rules of Practice and Procedure. The issue to be decided in determining whether petitioners are entitled *523 to prevail on their motion is whether this Court lacked jurisdiction to enter the stipulated decision because petitioners neither authorized nor ratified the filing of the petition on their behalf by their accountant. The relevant facts are summarized below. Respondent sent a statutory notice of deficiency, dated September 15, 1982, to petitioners in which he determined deficiencies in income tax as follows: Taxable Year
Deficiency
1977
$36,690
1978
27,911
1979
4,402
Petitioners Baron Shopsin and Barbro Shopsin, husband and wife, resided in Great Neck, New York at the time the petition was filed. They filed joint Federal income tax returns for the taxable years 1977, 1978, and 1979 with the Internal Revenue Service Center, Holtsville, New York. On December 14, 1982 a petition was filed with this Court bearing the signature of Lawrence J. Levy and seeking a redetermination of the deficiencies asserted against petitioners. On March 31, 1983 the Court entered a stipulated decision in petitioners' case. Several weeks later, on June 20, 1983, petitioners filed a motion for leave to file a motion to vacate the decision. On June 24, 1983 the Court granted *524 petitioners' motion for leave to file a motion to vacate the decision, and a hearing to entertain the motion was held in New York, New York on September 29, 1983. In support of their motion to vacate the stipulated decision, petitioners contend that they neither authorized nor ratified the filing of a petition on their behalf in this Court by Lawrence J. Levy. Therefore, according to petitioners, this Court lacked jurisdiction over their case. Petitioners further contend that, because extensions of time to assess tax for the petitioners' taxable years 1977 and 1978 were improperly executed, they were of no legal significance, and, therefore, the statute of limitations for those years expired prior to the date upon which respondent mailed to petitioners a statutory notice of deficiency with respect to the taxable years 1977, 1978, and 1979. Upon consideration of the evidence submitted at the hearing, the Court determines the following facts. Baron Shopsin, a psychiatrist by profession, and his wife, Barbro Shopsin, employed Lawrence J. Levy as their accountant in 1969. Levy's wife is either a first or second cousin of Baron. At least up until the time of the trial, petitioners *525 and Levy considered their accountant-client relationship to be a continuing one. Levy is not an attorney, and he is not admitted to practice before the Tax Court. Levy prepares petitioners' individual income tax returns and the income tax returns of Baron's professional corporation, Baron Shopsin, M.D., P.C. Levy also performs bookkeeping functions for petitioners and handles their tax matters incident to the preparation of their returns, such as audits. It was petitioners' practice to consult Levy with respect to all correspondence received from the Internal Revenue Service and to follow Levy's advice regarding the same. Sometimes petitioners would read the correspondence, and at other times they would not. If Levy advised petitioners to sign official tax-related documents, they would do so, without necessarily having read or understood the documents. In short, the relationship appeared to be one of complete trust. Levy was issued a Power of Attorney (Form 2848) dated February 28, 1981, authorizing him to represent petitioners for all purposes with respect to the taxable years 1977, 1978, and 1979. It was Levy's understanding that both Baron and Barbro signed the Power of *526 Attorney. However, it is now agreed that Barbro signed Baron's name on the form. Levy was issued another Power of Attorney (Form 2848) authorizing him to represent Baron and Barbro for all purposes with respect to the taxable year 1978.Again, both Baron's and Barbro's signatures appeared on this second Power of Attorney. However, there is some confusion with respect to whether Baron signed his own name or whether Barbro signed Baron's name. A Consent to Extend the Time to Assess Tax (Form 872), extending the time within which to assess petitioners' tax liability for the taxable year 1977, was signed by Barbro, who wrote in the names "Baron Shopsin M.D." and "Barbro Shopsin" in the spaces indicated for taxpayers' signatures. The consent form was signed by respondent on August 19, 1980, and recited that the period of assessment of a deficiency for 1977 was to be extended to December 31, 1981. A Special Consent to Extend the Time to Assess Tax (Form 872-A), further extending the time to assess petitioners' income tax for the taxable year 1977, was executed by Levy on October 14, 1981 and by respondent on October 19, 1981. A Special Consent to Extend the Time to Assess Tax (Form *527 872-A), extending the time to assess petitioners' income tax for the taxable year 1978 was executed by Levy on October 14, 1981, and by respondent on October 19, 1981. [1] A Consent to Extend the Time to Assess Tax (Form 872), extending the time to assess petitioners' income tax for the taxable year 1978, was executed by Levy on December 16, 1981, and by respondent on January 19, 1982. The consent form recited that the period of assessment of a deficiency for 1978 was to be extended to June 30, 1983. [2]
*528 Respondent sent a notice of deficiency, dated September 15, 1982, to petitioners in which he determined deficiencies in income tax for the taxable years 1977, 1978, and 1979 in the respective amounts of $36,690, $27,911, and $4,402. The asserted deficiencies related primarily to a tax shelter investment made by petitioners. [3]
*529 Upon receipt of the notice of deficiency, petitioners contacted Levy in order to determine what action should be taken. Levy advised petitioners that the asserted deficiency should be contested. He apprised petitioners that they had the option of paying the deficiencies and suing for a refund or filing a petition in the Tax Court prior to any payment of the deficiencies. It was agreed that a petition should be filed with the Tax Court because petitioners did not have sufficient cash with which to pay the deficiencies and sue for a refund. On December 14, 1982 Levy filed a petition on behalf of petitioners with this Court, contesting the asserted deficiencies. The petition was signed by Levy. The records of this Court did not show Levy to be admitted to practice before the Court. Accordingly, the petition was stamped, "NOT ADMITTED U.S. TAX COURT," and a letter dated December 15, 1982 was sent to Levy informing him that he could not be recognized as counsel of record in petitioners' case. There is no evidence that petitioners ever saw the contents of the petition. On January 25, 1983 respondent filed his answer to the petition. A copy of the answer was mailed to petitioners *530 at their home address, 6 Oakland Place, Great Neck, New York 11021, on January 19, 1983. After the petition was filed, Levy engaged in settlement negotiations with the Appeals Office, Long Island, New York. Levy was successful in negotiating a settlement that reduced the deficiency by $15,092. Levy communicated the terms of the settlement to petitioners. A stipulated decision evidencing the essential terms of the settlement agreement was prepared and was signed by both Baron and Barbro on March 29, 1983. The stipulated decision was thereafter signed by respondent and was then entered by this Court on March 31, 1983. It is this stipulated decision that the petitioners now urge the Court to vacate. Petitioners first contend that the Court lacked jurisdiction to enter the stipulated decision because petitioners neither authorized Levy to file the petition on their behalf nor did they subsequently ratify Levy's act in doing so. After careful consideration of all the evidence, we believe that Levy acted as petitioners' authorized agent in filing the petition and that Levy acted within the general scope of his employment when he signed the petition. It is clear from the record *531 in this case that petitioners routinely and without question placed their tax affairs in the hands of Levy. Time and again at the hearing petitioners testified that, when they received tax-related documents, their practice was to forward them to Levy or telephone Levy for his instructions with respect to what to do with the documents. Further, petitioners invariably deferred to Levy's judgment, signing without necessarily reading, or certainly understanding, whatever document Levy advised that they sign. In other words, petitioners permitted Levy to handle their tax affairs generally and knew that he did so. In essence, Levy was petitioners' general agent authorized to perform on a continuing basis all necessary acts with respect to petitioners' tax affairs. Levy's conduct in filing the petition was of the same general nature as, and incident to, those functions that he was employed to perform. Petitioners contend that Levy misled them by giving them the impression that he had located attorneys to represent petitioners and other investors in the challenged tax shelter. They further contend that they believed the settlement agreement represented not an agreement, as such, but *532 in Baron's words, a "fait accompli," about which petitioners had no choice but to sign. When questioned as to the frequency of petitioners' contacts with Levy after receipt of the notice of deficiency up until petitioners signed the stipulated decision, Baron testified that his conversations with Levy regarding the status of his case had been minimal. However, Baron's testimony suggested that he had spoken with Levy regarding other matters. Levy, on the other hand, testified that he never informed petitioners that they would be represented by legal counsel and that, in advising petitioners to sign the settlement agreement, he explained that the agreement represented the best result that could be afforded to petitioners at that time. He further testified that he believed petitioners understood the import of the settlement agreement that he advised them to sign. According to Levy, he and petitioners communicated on several occasions regarding the status of petitioners' case. The evidence is conflicting in the foregoing respects, and perhaps no one but the parties themselves will ever know exactly what transpired between the time petitioners received the notice of deficiency and *533 the time petitioners signed the settlement agreement. The fact that petitioners may not have fully understood the situation they faced is indeed unfortunate, but it does not absolve them of their responsibility or knowledge in this matter. Had petitioners attempted to ascertain the precise status of their case at any particular point in time, we believe petitioners had the wherewithal to do so. Petitioners cannot avoid their responsibility on the basis of their failure to press the matter. Even assuming, arguendo, that in filing the petition, Levy acted without authority, petitioners are still bound by the stipulated decision because petitioners must be deemed to have ratified Levy's actions. When petitioners received respondent's answer to the petition, petitioners either knew, or reasonably should have known, that their case was pending before this Court. Further, even though petitioners may not fully have understood the implications of the stipulated decision, they could have sought clarification. In addition, surely they would have objected to signing the document when presented to them had they never authorized Levy to act on their behalf. Petitioners' actions, and *534 in some instances their inaction, effectuated a ratification of Levy's authority in filing the petition with this Court. Ultimate responsibility for their personal tax affairs rests with the taxpayers who had the duty and the opportunity to disavow any unauthorized acts by Levy prior to filing the motion now before the Court. In support of their motion, petitioners rely on Hoj v. Commissioner,26 T.C. 1074 (1956), and Hoffman v. Commissioner,63 T.C. 638 (1975), and attempt to distinguish Kraasch v. Commissioner,70 T.C. 623 (1978). In Hoj the original petition filed with the Tax Court was not signed by the taxpayers or counsel, but was signed by one who described himself as agent. The defects in the petition were brought to the attention of the taxpayers by an order to show cause but were not remedied. The proceeding was then dismissed for lack of jurisdiction. In dismissing the proceeding, the Court noted that it was without knowledge as to whether the purported agent had any authority from the taxpayers to file the original *535 petition. If he lacked proper authority from them, then the taxpayers never filed a timely petition, and the Court would have no jurisdiction to bind the taxpayers to any decision which it might render. The Hoj case was distinguished in Carstenson v. Commissioner,57 T.C. 542, 545 (1972). In Carstenson a defective petition was timely filed on behalf of the taxpayers by their agent, who was not authorized to practice before the Tax Court. A proper amended petition was filed by the taxpayers more than 90 days after the notice of deficiency was mailed to the taxpayers. The Court held that the amended petition related back to the original petition and was thus timely filed. In so holding, the Court pointed out that the taxpayers had regularly solicited their agent's assistance in the preparation of their returns, that they took the notice of deficiency to him for his recommendation as to what should be done, that they were present when he prepared the imperfect petition, and that they sought his assistance in the preparation of their amended returns. These facts were sufficient to support a finding that the taxpayers had ratified and confirmed their agent's *536 authority in filing the petition and satisfied the Court that the original petition was filed with the taxpayer's knowledge, consent, and approval. The Court in Carstenson distinguished Hoj by commenting that, if the taxpayers therein had taken steps to ratify and confirm their agent's authority in filing the petition, the Court would have found jurisdiction. In Hoffman v. Commissioner,supra, the Court followed Hoj when it dismissed the case for lack of jurisdiction partially on the grounds that the petition had been filed by an accountant who was neither admitted to practice before the Tax Court nor authorized by the taxpayers to file a petition on their behalf. The Court found that the accountant had acted merely in the capacity of a volunteer and that his actions had never been ratified by the taxpayers. Having determined as a factual matter that petitioners did authorize, or at least ratify, Levy's act in filing a petition on their behalf, petitioners can derive no support from the Hoj and Hoffman cases. The case most closely analogous to the instant case, notwithstanding petitioners' attempts to distinguish it, is the Kraasch *537 v. Commissioner case, supra. There, a petition was filed and signed in the names of the taxpayers by the taxpayers' tax consultant, who was not an attorney and was not admitted to practice before the Tax Court. The Commissioner filed a motion to dismiss for failure to state a claim upon which relief could be granted. Upon the taxpayers' failure to file a proper amended petition, the Court ordered dismissal and entered a decision. The taxpayers subsequently filed a motion to modify the order, claiming that the Court lacked jurisdiction to enter the order because the taxpayers neither signed the petition nor authorized anyone else to file or sign it on their behalf. Upon consideration of the evidence submitted at the hearings on the taxpayers' motion, the Court found that the taxpayers' accountant acted within the scope of his employment when he signed the petition. The Court noted, inter alia, the following salient facts. The taxpayers permitted the consultant to handle their tax affairs generally and had knowledge that he did so. When the taxpayers received tax information they routinely forwarded it over a period of years to their consultant and relied upon him for *538 advice. The taxpayers, although not familiar with tax procedures, were aware of the status of their case at all times. They received correspondence from the Commissioner or the Court at every juncture of their case and received copies of all documents prepared by their tax consultant. They knew that the tax correspondence they received were official documents. They spoke to their consultant on a regular basis. On these facts, the Court held that the taxpayers had failed to meet their burden of proving that their agent's acts were unauthorized and that, in any event, their subsequent conduct ratified their tax consultant's actions in filing the petition. Consequently, the Court concluded that it had jurisdiction and properly entered the order of dismissal and decision. Petitioners seek to distinguish Kraasch on essentially two grounds. First, they contend that they, unlike the taxpayers in Kraasch, were not apprised of the status of their case throughout the proceedings. Second, they contend that they, unlike the taxpayers in Kraasch, are not knowledgeable in tax matters. We fail to find these attempted distinctions convincing. That the taxpayers in Kraasch *539 were aware of the status of their case at all times was simply taken as evidence that the taxpayers did indeed authorize their tax consultant to file a petition on their behalf or at least ratified his actions in doing so by remaining silent. The taxpayers' awareness of the status of their case is not the only convincing evidence of authorization and ratification, for authorization and ratification also may be demonstrated in situations where taxpayers do not fully appreciate the unfolding developments in the case. For example, as we stated in Kraasch:
Moreoever, petitioners cannot disavow knowledge of this case or their tax consultant's actions even if they had not chosen to discuss their case with Mr. Watkins [their tax consultant]. Having received the documents and having subsequently spoken to Mr. Watkins on a regular basis, petitioners' silence would have effectuated a ratification. Ultimate responsibility for their personal tax matters rests with petitioners who had a duty and were in a position to disaffirm any unauthorized acts by Mr. Watkins long before filing their motion now before the Court. [70 T.C. at 628] Similarly, in the instant *540 case petitioners knew, or certainly should have known, that their case was pending before the Tax Court. That petitioners may not have been cognizant of the precise status of their case throughout the proceedings does not vitiate the authorization or ratification of Levy's action in filing a petition with this Court. Further, we find nothing in the Kraasch case to support petitioners' statement that the taxpayers therein, unlike themselves, were knowledgeable in tax matters. With respect to petitioners' second contention that the statute of limitations bars the assessment of taxes for the taxable years 1977 and 1978, we note initially that this defense was not raised until after this Court entered the stipulated decision. Furthermore, petitioners apparently did not apprise respondent that they were raising this issue with respect to the taxable year 1977 until September 28, 1983, the day before the hearing on petitioners' motion, and with respect to the taxable year 1978 until September 29, 1983, immediately before the hearing.
Rule 39, Tax Court Rules of Practice and Procedure, *541 requires that a party set forth in his pleading any matter constituting an affirmative defense, such as the statute of limitations. Time and again this Court has stated that we will not consider issues not raised in the pleadings. See, e.g., Rollert Residuary Trust v. Commissioner,80 T.C. 619, 636 (1983), on appeal (6th Cir. Aug. 29, 1983); Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975). See also Friedberg v. Commissioner,T.C. Memo. 1960-251, wherein a deficiency that would have been barred absent fraud was sustained since the taxpayers failed to plead the statute of limitations. Adherence to the Court's pleading rules is particularly appropriate where the issue is a factual one and where the opposing party was not made aware of the new issue in sufficient time to prepare properly to meet it. Markwardt v. Commissioner,supra at 997; Estate of Mandels,supra at 73. We have found in the instant case that petitioners authorized the filing of a petition on their behalf. Since neither that petition nor any other pleadings *542 submitted in this case raised the statute of limitations defense, we conclude that the defense is not properly before us at this late date. It is agreed by the parties that Barbro Shopsin signed her husband's name to the Power of Attorney (Form 2848) executed on February 28, 1981 and to the Consent to Extend the Time to Assess Tax (Form 872) with respect to the taxable year 1977. It is further agreed that Levy signed the Special Consent to Extend the Time to Assess Tax (Form 872-A) with respect to the taxable year 1977, the Special Consent to Extend the Time to Assess Tax (Form 872-A) with respect to the taxable year 1978, and the Consent to Extend the time to Assess Tax (Form 872) with respect to the taxable year 1978. It is not entirely clear from the record whether or not petitioners dispute the genuineness of Baron Shopsin's signature on the Power of Attorney (Form 2848) executed on December 11, 1981. Whether or not these documents were effective to extend the statute of limitations against Baron Shopsin for the taxable years 1977 and 1978 depends, in large measure, upon whether or not Baron actually or implicitly authorized Barbro to sign Baron's name to the relevant documents. *543 The question of actual or implied authority is inherently a factual one. Under the circumstances, a strict adherence to the Court's pleading rules is particularly appropriate. Even if the statute of limitations issue were properly before us, we believe that the record provides ample evidence to support a finding that Baron Shopsin implicitly authorized his wife to sign his name to the documents in question and hence that the documents were effective to extend the statute of limitations on assessment against Baron, as well as Barbro. [4] Further, Baron's failure to raise the statute of limitations defense until several weeks after he personally signed the stipulated decision, which clearly and in no uncertain terms stated that the decided deficiencies related to the taxable year 1977, 1978, and 1979, ratifies and confirms that authority. *544 Various other collateral contentions were raised by petitioners, such as the existence of substantive tax issues that should have been, but were not, raised in the petition. [5] In view of our conclusions set forth above, we are unable to address the merits of those issues. An order will be entered denying petitioners' motion to vacate the decision.
Footnotes
1. A Special Consent to Extend the Time to Assess Tax (Form 872-A) does not set forth a specific date of expiration. Rather, it states that with respect to the taxable year designated on the form, the tax may be assessed on or before the 90th day after (a) the Internal Revenue Service receives a Notice of Termination of Special Consent to Extend the Time to Assess Tax from the taxpayer; or (b) the Service mails a Notice of Termination of Special Consent to Extend the Time to Assess Tax to the taxpayer; or (c) the Service mails a notice of deficiency for the designated period, except that the time for assessing the tax for the period stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited. ↩
2. We note that the printed Power of Attorney (Form 2848) specifically authorizes the appointed attorney-in-fact to execute consents extending the statutory period for assessment. A taxpayer can deny authority to perform such act by striking through the printed provision granting the authority. The Powers of Attorney issued to Levy did not purport to deny Levy authority to execute consents.↩
3. In addition, respondent determined that certain payments made to petitioners during 1978 by Baron Shopsin, M.D., P.C. were constructive dividends and increased petitioners' taxable income for 1978 accordingly. Petitioners now contend that the existence of a "hedge agreement" incorporated into Baron Shopsin's employment contract with Baron Shopsin, M.D., P.C. would have eliminated the additional tax assessed for the taxable year 1979. The "hedge agreement" provided that in the event the corporation was denied deductions for certain expenses, the employee would be obligated to refund to the corporation an amount equal to the deductions disallowed. In support of their motion to vacate the decision, petitioners argue that due to the quality of their representation by Levy, this issue was never raised, and, thus, they were unduly prejudiced by being represented by Levy.↩
4. We note that even if we were to determine on the merits that Barbro Shopsin was not authorized to sign her husband's name to the documents in question and that the statute of limitations barred assessments against Baron Shopsin for the taxable years 1977 and 1978, the full amount of the deficiencies for those years could properly be asserted against Barbro Shopsin, who has never disputed that she signed the documents on her own behalf. Such would be the case since petitioners filed joint returns and liability under a joint return is joint and several. See Tallal v. Commissioner,77 T.C. 1291, 1295 (1981); Magaziner v. Commissioner,T.C. Memo. 1957-26↩.
5. See footnote 3, supra.↩