SAMUEL RIKER, JR., EXECUTOR, ESTATE OF J. AMORY HASKELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7102.   Promulgated April 18, 1927.

1. Loss upon a bona fide sale of stock allowed, the March 1, 1913, value being determined to be cost as the stock was acquired just prior and subsequent to that date.

2. A country club membership acquired by a corporate officer that he might have uninterrupted privacy for consultations on occasional business trips to that locality *held* acquired for personal convenience, and a loss sustained upon its sale is not deductible.

3. A farming enterprise found to have been conducted for profit, and losses sustained therein *held* deductible.

*Lawrence A. Baker, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies of income tax for the calendar years 1920 and 1921, in the total amount of $5,477.53. These deficiencies arise from the refusal of the Commissioner to allow the following deductions: (1) A loss of $9,998 resulting from a sale made in 1920 of shares of stock of the Big Salmon Dredging Co.; (2) a loss of $349 arising from a sale made in 1920 of shares of stock of the Sunset Mining & Development Co. and from certain assessments made on that stock; (3) a loss of $600 resulting from a sale made in 1921 of a share of stock of the Bloomfield Hills Country Club; and (4) losses to the extent of $9,087.87 incurred in 1921 in the operation of a farm at Middletown, N. J. At the hearing, the petitioner withdrew his allegations with respect to item two. This leaves for consideration items one, three and four.

FINDINGS OF FACT.

The petitioner is the executor of the estate of J. Amory Haskell, who died in the latter part of 1923. The decedent resided on his farm at Middletown, N. J., and had an office at 224 West Fifty-seventh Street, New York City. He was a man of affairs. He was a vice president of the General Motors Corporation, and was connected in an official capacity with E. I. du Pont de Nemours & Co.

Mr. Haskell acquired 25,000 shares of the stock of the Big Salmon Dredging Co., a gold-dredging enterprise, for which he paid $10,000. This sum was paid as follows: $3,750 on October 4, 1912, $3,750 on October 11, 1912, and $2,500 on April 16, 1913. The shares had a par value of one dollar each and the stock purchased prior to March 1, 1913, had a March 1, 1913, value of the cost thereof. On April 29, 1920, Haskell placed these shares, properly endorsed, with Adrian H. Muller & Son, 55 Williams Street, New York, with the request

that they advertise and sell the stock. Advertisement was made and the stock sold by Muller & Son, who, on May 12, 1920, remitted to Mr. Haskell, $2 as the net proceeds of the sale.

During the year 1918, Haskell made frequent trips to Detroit, Mich., to attend business meetings of the General Motors Corporation. In order that he might have uninterrupted privacy for consultations, he became a member of the Bloomfield Hills Country Club. This membership he acquired by the purchase of one share of the stock of the Club, for which he paid, on October 8, 1918, the sum of $1,100. Because of the condition of his health, he made few trips to Detroit in 1921, and thereafter went to Detroit only when it was absolutely necessary. On June 6, 1921, he sold his share of stock for $500.

In 1906 Haskell began purchasing land near Middletown, N. J. First and last he acquired about 260 acres for which he paid at rates ranging from $95 to $300 per acre. He built his residence, a mansion of 26 rooms, on part of this tract. From a date long prior to 1921, the taxable year in question, Haskell was actively engaged in farming a part of this property. Between 30 and 40 acres were used as orchards, gardens, lawns and for private stables appurtenant to the dwelling. From 75 to 100 acres were cultivated or used for pasture. The remainder was woodland. While there was no physical separation except fencing, of the farm land from that pertaining to the dwelling, Haskell, from the beginning, made an economic division of the property. He was rigidly thorough in the matter of accounting, keeping separate accounts for the farm and for household expenses. For the farm, two books were kept, a combination cash book and journal and a ledger. These books had been carefully kept for over 15 years. In them was meticulously entered every item of income and outgo. Haskell required monthly statements from his bookkeeper. The farm and household accounts were never confused. All supplies furnished by the farm to the household were paid for in cash and proper entries made on the books of the farm. On the other hand, the vegetable gardens and the fruit trees were allotted to the residential part of the tract and no charges for fruit or vegetables were made or entered on the books.

The principal industry of the farm was dairying. A dairy route was operated which had over 100 customers. There were employed on the farm about 30 men. There was paid for hired help in the year 1921, the sum of $9,127.52. The opening inventory for 1921 showed assets of the value of $28,237 and the closing inventory, $23,915. The total sales made during the year amounted to $17,034.14. There were other miscellaneous receipts of $1,514.42.

The gross profits for the year were $11,355.73. The expenses, depreciation, and repairs amounted to $20,443.60. The net farm loss was, therefore, $9,087.87, the amount claimed in the petition.

In addition to milk and its products, and a few other minor items, there were produced on the farm during the year 1921, 975 bushels of corn, 900 tons of alfalfa, 2,400 tons of hay, 600 tons of straw, 1,200 tons of ensilage, and 150 tons of beets. The opening inventory for 1921 shows 43 cattle with a total value of $19,575, and the closing inventory contained 41 cattle with a total value of $16,585. The amount received during the year for milk, cream and butter, was $14,932.35.

As a general rule, Haskell spent Wednesdays and Saturdays, in addition to Sundays, at his home, during which days he supervised the management of his farm and consulted with his superintendent. He entertained at his home in the manner that would be expected of one in his social and financial position. While he from time to time exhibited his stock at farmers' fairs, he did not keep his farm as a show place.

With the possible exception of one year, the farm always showed losses, the amounts of which do not appear in the record. Haskell's wife and his brother-in-law, Riker, often remonstrated with him for carrying on farm operations which were continually resulting in losses. His response always was that in the end he would make it pay. He often stated that eventually he expected to retire from general business and that then his farm would be his sole interest, and out of it he would make money.

OPINION.

MILLIKEN: (1) The investment made in the stock of the Big Salmon Dredging Co. was a transaction entered into for profit. While the record does not show when the stock was issued to Mr. Haskell, it appears that it was paid for just prior to and just after March 1, 1913. Its value was its cost, $10,000. There is nothing in the record to impeach the bona fides of the sale in May, 1920. The Commissioner, therefore, erred in refusing to allow the loss claimed.

(2) The purchase by Haskell of one share of stock in the Bloomfield Hills Country Club was clearly not a transaction entered into for profit. Nor can it be held that the loss arising from the sale of the share was a loss incurred in trade or business. The purchase of the share of stock was made rather for the personal convenience of Haskell than for business purposes. The Commissioner did not err in refusing to allow the deduction of this loss. *Franklin M. Magill*

v. *Commissioner*, 4 B. T. A. 272; *Appeal of Arthur B. Chivers*, 4 B. T. A. 1083.

(3) The decedent's right to take the deduction of $9,087.87, resulting from the operation of the farm during the year 1921, turns on the question whether he engaged in farming as a business, with the expectation of making gain, or for recreation or pleasure. See *Thomas F. Sheridan* v. *Commissioner*, 4 B. T. A. 1299, and *Reginald C. Vanderbilt* v. *Commissioner*, 5 B. T. A. 1055, where the authorities are so thoroughly collated as to make further citation unnecessary.

The farm in question was a well equipped dairy farm. It was operated in a businesslike manner. Its accounts were kept so as to show the most minute items of income and outgo. Its only relation to the residence was that of propinquity. This gave Haskell a better opportunity to superintend his farm than if he had lived at a distance from it. He availed himself of the opportunity to the fullest extent compatible with his other interests. The products of the farm were sold, even the family paying for what they consumed. The dairy route was similar to that operated by ordinary dairy farms. The farm was not carried on for display. The cattle had an average value of $44 per head. Cattle of this value are not kept for display.

All the essentials of a farming business were present, unless such losses were incurred in the taxable year and in previous years as to demonstrate that Haskell carried on this enterprise without the hope of ever making it profitable and for the gratification of a personal whim. That the latter element is absent is shown by the volume of production, the amounts received from sales, and the methodical way in which the farm was operated. So far from this undertaking being a personal whim, the uncontradicted evidence shows that Mr. Haskell repeatedly stated that he not only intended to make his farm pay, but that he expected to make it pay. The fact that losses occur is only one of the evidential facts from which it is to be determined whether one carries on farming as a business or only for recreation. If losses, or even repeated losses, were the only criterion by which farming is to be judged a business, then a large proportion of the farmers of the country would be outside the pale. It is the expectation of gain, and not gain itself which is one of the factors which enter into the determination of the question. We have not the means of placing ourselves in Mr. Haskell's shoes and if we could, we should be slow in holding that his repeatedly expressed judgment was wrong. It is sufficient that the farm was operated in a businesslike manner and with a well defined and possibly reasonable hope that profits would eventually accrue. These factors being present, it follows that the decedent was engaged, during 1921, in farming

as a business and that the losses incurred in this operation are a proper item of deduction, under section 214(a)(4) of the Revenue Act of 1921.

> *Judgment will be entered on 15 days' notice, under Rule 50.*