DANNY K. ELDRIDGE AND ELMA J. ELDRIDGE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eldridge v. Commissioner
Docket No. 28087-92.
United States Tax Court
T.C. Memo 1995-384; 1995 Tax Ct. Memo LEXIS 384; 70 T.C.M. (CCH) 380; August 14, 1995, Filed *384 Decision will be entered under Rule 155. Richard H. Tye, for petitioners. Franklin R. Hise, for respondent. PARR, Judge PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax for taxable years 1987, 1988, and 1989 as follows: Additions to Tax and Increased Interest
Sec.
Sec.
Sec.
Sec.
Sec.
6653(a)(1)/
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661
6662(a)
6621(c)
1987
$ 21,909
$ 1,303
[1]
$ 6,244
--  [2]
1988
19,909
995
--
4,977
--  [2]
1989
58,755
--
--
--  $ 11,751
--
After agreements and concessions, [1] the issues for decision are: (1) Whether the cattle-raising activity conducted by petitioners was an activity engaged in for profit under section 183. [2] We hold it was. [3] *386 (2) Whether certain depreciation deductions claimed by petitioners are allowable business expenses under section 162. We hold they are. [4] (3) Whether petitioners are liable *385 for negligence additions to tax under sections 6653(a)(1)(A) and (B) for 1987, 6653(a)(1) for 1988, and 6662(a) for 1989. We hold they are to the extent provided below. (4) Whether petitioners are liable for the addition to tax for substantial understatement under section 6661 for taxable years 1987 and 1988. We hold they are to the extent provided below. (5) Whether petitioners are liable for the increased rate of interest due on a substantial understatement attributable to a tax-motivated transaction under section 6621(c) for taxable years 1987 and 1988. We hold they are not. FINDINGS OF FACT The parties have stipulated some of the facts. The stipulated facts and the exhibits accompanying such facts are incorporated into our findings by this reference. Danny and Elma Eldridge are married and filed joint Federal income tax returns for all years in issue. Petitioner husband refers to Danny K. Eldridge; petitioner wife refers to Elma J. Eldridge. At the time the petition was filed, petitioners resided in Spring Branch, Texas. In 1979, petitioners purchased a 27-acre tract of rural real property near Spring Branch, *387 Texas. In that same year, petitioners moved from Midland, Texas, to a home located on the 27-acre tract of land. After the purchase of the 27-acre tract of land, but also in 1979, petitioners purchased a 33-acre tract of rural real property. The 27-acre tract and the 33-acre tract were located approximately one-quarter mile apart on the same road. Petitioners immediately began preparing both properties for a Brangus cattle-raising operation. Petitioners cleared the 27-acre tract of cedar and underbrush, fenced the property, and constructed a barn and cattle pens. Petitioners cleared the 33- acre tract of all cedar and underbrush, fenced the entire perimeter of the property, drilled water wells, and constructed a water tank, a cattle barn with working pens, and a storage barn. Petitioners also built roads on the 33-acre tract. Petitioners began their cattle herd by purchasing four pregnant Brangus cows in 1980. The parties dispute the number of registered Brangus cattle owned by petitioners for the years in issue. [5] However, since petitioners began the cattle-raising activity, there is no doubt that the size of petitioners' herd has increased. In fact, at the time of trial, petitioners' *388 cattle herd consisted of approximately 140 cattle. In 1988, petitioners expanded their cattle operation by purchasing a 200-acre tract of rural real property in Wilson County, Texas (Wilson County property). The Wilson County property was approximately 57 miles from the *389 original two tracts of property. At the time of purchase, the Wilson County property was heavily wooded, and it was overrun with mesquite and underbrush. However, the property did have a barn, an old house, a perimeter fence, and some cross fencing. Petitioners made a number of improvements to the Wilson County property to prepare it for inclusion in the Brangus operation. Petitioners cleared approximately 140 acres of pasture, removing mesquite and underbrush. The remaining 60 acres were partially cleared. After clearing the property, three water tanks were installed, and an irrigation system was built on the property. Petitioners tilled the land and planted hybrid, coastal Bermuda grass for cattle grazing and hay production. Petitioners also replaced most of the property's perimeter fencing, since it was in disrepair. A hay barn, cattle pens, and a road were also constructed on the property. From the beginning of the cattle-raising activity in 1979 until 1990, petitioner husband was employed by the Clajon Gas Co., L.P. (Clajon). During the years at issue, petitioner husband worked in Clajon's business development department; his work involved the investigation of potential mergers *390 and acquisitions. In 1990, petitioner husband left his job with Clajon; thereafter, he worked full time in the cattle operation. Petitioner wife was not employed by a third party during the years in issue. Petitioners reported losses of $ 56,905, $ 71,104, and $ 207,186 from their cattle-raising activity on their joint Federal income tax returns for the taxable years 1987, 1988, and 1989, respectively. OPINION Issue 1. Whether Petitioners Engaged in Their Cattle-Raising Activity With the Objective of Making a Profit
For the taxable years 1987, 1988, and 1989, respondent determined that petitioners did not engage in their cattle-raising activity with the intent to earn a profit. In accord with section 183, respondent disallowed the deductions arising from petitioners' cattle-raising activity to the extent that such deductions exceeded the income earned from the activity. Petitioners argue that they engaged in their cattle-raising activity with the intent to earn a profit, and therefore the losses arising from the cattle-raising activity are allowable. Section 183(a) provides that if an activity is not engaged in for profit, "no deduction attributable to such activity shall *391 be allowed", except as otherwise provided in section 183(b). [6] Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The test for determining whether an individual is carrying on a trade or business under section 162 is whether the taxpayer's actual and honest objective in engaging in the activity is to make a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), *392 affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. While a taxpayer's expectation of profit need not be reasonable, there must be a good faith objective of making a profit. Allen v. Commissioner, 72 T.C. 28, 33 (1979); sec. 1.183-2(a), Income Tax Regs.
To determine whether the requisite profit objective exists, we examine a variety of objective facts. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(a), Income Tax Regs. Thus, the determination of whether the requisite profit objective exists depends upon all the surrounding facts and circumstances of the case. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. The burden of proving the requisite objective is on the taxpayer. Rule 142(a); Allen v. Commissioner, supra at 34. Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayers carried on *393 the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayers in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayers; and (9) any elements indicating personal pleasure or recreation. Although these factors are helpful in ascertaining a taxpayer's objective in engaging in the activity, no single factor, nor the existence of even a majority of the factors, is controlling; rather, the facts and circumstances of the case remain the primary test. Keanini v. Commissioner, supra at 47. To aid in our determination, we will consider the factors in the regulation seriatim. (1) Manner of Carrying on the Activity
Conducting an activity in a businesslike manner may indicate that the taxpayer has the necessary profit objective. Engdahl v. Commissioner, supra at 666-667. *394 For example, keeping books and records related to an activity may be indicative of a profit objective. Id.; sec. 1.183-2(b)(1), Income Tax Regs. In addition to maintaining records, advertising an activity may indicate a profit objective. Engdahl v. Commissioner, supra.Also, adapting new techniques and abandoning inefficient methods may support the conclusion that the taxpayer possessed the requisite profit objective. Allen v. Commissioner, supra at 35; sec. 1.183-2(b)(1), Income Tax Regs.
Here, petitioners conducted their activity in a businesslike manner. For example, petitioners kept records of receipts and expenditures arising from their cattle-raising activity. Petitioners also maintained a herd book for the cattle-raising activity. The herd book included detailed information on each cow, including weight, testing results, and health care information (e.g., vaccination records). In addition to maintaining records, petitioners advertised their operation by exhibiting their cattle at breed shows and fairs. The overall businesslike manner in which petitioners carried on their cattle-raising activity supports *395 their claim that they engaged in the activity with the intent to earn profit. Petitioners changed their operating methods in an effort to increase profitability, indicating a profit objective. For example, petitioners hired a third party to board their cattle during a drought, saving money on supplemental feed costs. In addition, when petitioners' herd outgrew their existing facilities, petitioners purchased an additional 200 acres of land. These changes in operation are persuasive, objective evidence of a profit objective. Engdahl v. Commissioner, supra; Haladay v. Commissioner, T.C. Memo. 1990-45; Archer v. Commissioner, T.C. Memo. 1987-70; sec. 1.183-2(b)(1), Income Tax Regs. These changes coupled with the businesslike manner in which the operation was conducted indicate an actual and honest objective to earn a profit in the cattle-raising activity. (2) Expertise of Taxpayer or Advisers
The fact that a taxpayer studies the accepted business, economic, and scientific practices associated with the activity, or consults with experts, may help demonstrate a profit objective. Engdahl v. Commissioner, supra at 668; *396 Archer v. Commissioner, supra; sec. 1.183-2(b)(2), Income Tax Regs. Petitioner husband studied the business, economic, and scientific practices associated with the Brangus cattle industry. For example, petitioner husband stayed abreast of cattle-industry developments by reading industry publications and attending seminars. He also obtained information on the cattle industry by participating in a number of cattle industry associations, including the Hill Country Brangus Breeders Association, the International Brangus Breeders Association (IBBA), the National Cattlemen's Association, and the Texas and Southwestern Cattle Raisers Association. In addition to the foregoing, petitioner husband sought advice and consultation regarding the cattle industry from a number of individuals. For example, Ronnie Eckel, the secretary-treasurer for Lyssy & Eckel, Inc., which supplied cattle feed and fertilizer for petitioners, testified that petitioner husband often consulted with him regarding cattle nutrition and reproduction. Petitioners also consulted with their veterinarian regarding health care, including vaccinations, worming, etc. Furthermore, Gary Bruns, *397 the President of the Hill Country Brangus Breeders Association and a Director of the IBBA, testified that petitioner husband was very inquisitive regarding trends within the cattle industry, and he was very concerned about technological and scientific advancements which were directed at the productivity of a beef cattle operation. In addition to consulting with those knowledgeable in the industry, the fact that taxpayers have personal experience in the activity in question may indicate a profit objective. McGuire v. Commissioner, T.C. Memo. 1992-542. Here, petitioners each had cattle-raising experience before embarking upon their own cattle-raising operation. Petitioner husband grew up on a wheat farm in Oklahoma, where his grandfather raised wheat-pastured cattle. Petitioner wife grew up on a cattle ranch in New Mexico, where her parents raised Brahmin cattle. To supplement his childhood background in the cattle-raising industry, petitioner husband made a concerted effort to gain additional experience and training in the cattle-raising industry, and he sought and relied on advice from others when necessary. In sum, the evidence shows that petitioners *398 were genuinely concerned with acquiring the knowledge necessary to make their cattle-raising operation profitable. (3) Time and Effort Expended in the Activity
The fact that a taxpayer devotes much of his time and effort to carrying on an activity, particularly if there are no substantial personal or recreational elements associated with the activity, may indicate the requisite profit objective. Haladay v. Commissioner, supra; Archer v. Commissioner, supra; sec. 1.183-2(b)(3), Income Tax Regs. As was stated by the Court of Appeals for the Seventh Circuit: "Common sense indicates to us that rational people do not perform hard manual labor for no reason, and if the possibility that petitioners performed these labors for pleasure is eliminated the only remaining motivation is profit." Nickerson v. Commissioner, 700 F.2d 402, 407 (7th Cir. 1983), revg. T.C. Memo. 1981-321. In this case, petitioners devoted substantial amounts of time to their cattle-raising activity. Although petitioner husband was employed full time during the years in issue, the record *399 demonstrates that petitioner husband devoted almost all of his personal time to caring for the cattle. Petitioner wife worked on the ranch full time. The work conducted by petitioners was rigorous physical labor. Petitioners fed and vaccinated the cattle, cleared land, constructed improvements, and even delivered calves. In short, the amount of time petitioners devoted to the activity combined with the type of work they engaged in suggests that petitioners intended to derive a profit from the activity. (4) Expectation That Assets May Appreciate.
The prospect of realizing a profit on the sale of the property used in the activity may indicate the requisite profit objective. Allen v. Commissioner, 72 T.C. at 35; Engdahl v. Commissioner, 72 T.C. at 668 n.4; sec. 1.183-2(b)(4), Income Tax Regs. When petitioners purchased the original two tracts of property, they believed that the proximity of the properties to San Antonio, Texas, would cause the properties to appreciate in value over the years. Moreover, petitioners believed that the significant improvements they made to all three tracts of property would enhance their *400 values. The total appreciation in the value of the properties may or may not offset the aggregate operating losses incurred by petitioners. Nonetheless, we believe that petitioners had a bona fide expectation that a sale of the assets used in their cattle-raising operation would produce a profit. [7]Engdahl v. Commissioner, supra at 668-669. (5) Taxpayer's Success in Other Activities
We have recognized that a taxpayer's success in other business activities may indicate a profit motive. *401 Hoyle v. Commissioner, T.C. Memo. 1994-592. During the years in issue, petitioner husband was a successful executive in the natural gas industry. However, we believe this fact alone does not tend to establish a profit objective, particularly where, as here, the successful business operation is factually dissimilar from the activity in question. Haladay v. Commissioner, T.C. Memo. 1990-45. Therefore, the success of petitioner husband in the natural gas industry is a factor that neither supports nor weakens petitioners' position. (6) History of Income or Losses From the Activity
A history of losses over an extended period may indicate the absence of a profit objective. Allen v. Commissioner, supra at 34. However, although a long history of losses is an important criterion, it is clear that this factor is not necessarily determinative of a lack of a profit objective. E.g., Allen v. Commissioner, supra at 34-35 (deductions allowed in spite of 12 straight years of losses in a ski lodge operation); Engdahl v. Commissioner, supra at 669 *402 (deductions allowed in spite of 12 straight years of losses in a horse-breeding operation); Haladay v. Commissioner, supra (deductions allowed in spite of 15 straight years of losses in cattle- and hog-raising activity). A series of initial or startup losses does not necessarily indicate that the activity was not engaged in for profit. Engdahl v. Commissioner, supra at 669; sec. 1.183-2(b)(6), Income Tax Regs. Moreover, losses sustained because of unforeseen or fortuitous circumstances beyond the control of the taxpayer do not indicate that the activity was not engaged in for profit. Engdahl v. Commissioner, supra.
In this case, petitioners have engaged in their cattle-raising activity for 14 years, sustaining losses well past the length of time that could be called the "startup" period. However, the losses were due, at least in part, to unfortunate events beyond the control of petitioners. For example, in 1985, there was a dramatic decline in the market prices for registered Brangus cattle. In addition, because of drought and grasshopper infestation, petitioners had to purchase *403 unanticipated amounts of hay and other feed. The foregoing circumstances bring to mind a statement we made in an early case: If losses, or even repeated losses, were the only criterion by which farming is to be judged a business, then a large proportion of the farmers of the country would be outside the pale. [Riker v. Commissioner, 6 B.T.A. 890, 893 (1927).]
Accordingly, we conclude that, on the basis of the record in the instant case, petitioners' string of losses does not necessarily indicate that petitioners lacked the requisite profit objective. 7) Amount of Occasional Profits Earned, If Any
If an activity generates only small, infrequent profits and typically generates large losses, the taxpayer conducting the activity may be less likely to have a profit objective. Golanty v. Commissioner, 72 T.C. 411, 427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b)(7), Income Tax Regs. Petitioners' cattle-raising activity has never shown a profit. In fact, petitioners' expenses have greatly exceeded their revenue. For example, their revenue from *404 the activity has ranged between $ 0 and $ 34,503, while their expenses have ranged between $ 14,229 and $ 221,592. We find that this factor, standing alone, supports respondent's position. 8) Taxpayer's Financial Status
Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit. Engdahl v. Commissioner, 72 T.C. at 669; 1.183-2(b)(8), Income Tax Regs. The rationale for this rule is that a taxpayer with substantial income unrelated to the activity can more easily afford to operate the activity as a hobby. During the years at issue, petitioner husband had substantial income from his job in the natural gas industry. Consequently, petitioners could afford to operate the unprofitable cattle-raising activity. Although this fact alone suggests a lack of profit objective, we do not find this fact to be overly persuasive. As we have stated before: "As long as tax rates are less than 100 percent, there is no 'benefit' in losing money." Engdahl v. Commissioner, supra at 670. (9) Elements of Personal Pleasure
The fact that a taxpayer receives personal or recreational *405 benefits from an activity may indicate that the taxpayer is not engaging in the activity for profit. Sec. 1.183-2(b)(9), Income Tax Regs. In this case, however, the activities conducted by petitioners could hardly be characterized as pleasurable. Rather, it appears that substantially all of the cattle-raising activities conducted by petitioners consisted of difficult, manual labor. Accordingly, this factor indicates that petitioners had the requisite profit motive in conducting their cattle-raising activity. Intermingled throughout her arguments regarding the foregoing nine factors, respondent's brief maintains a consistent theme: respondent argues that petitioners used the cattle-raising activity as a funnel through which nondeductible personal expenses could be deducted as farm expenses. Petitioners have conceded that a number of expenses were improperly deducted in the years at issue. See supra note 1. However, unlike the specific items conceded by petitioners and the items addressed in our discussion of the second issue below, respondent has not determined (either in the notice of deficiency, at trial, or on brief) that any of these other items deducted by petitioners are *406 not deductible. Rather, respondent asserts that the deduction of these costs is a reason why we should hold that the cattle-raising activity was not an activity engaged in for profit. In effect, respondent has taken an all-or-nothing approach with regard to these expenditures. We find respondent's "funnel" argument to be unpersuasive. Petitioners may have improperly deducted certain personal expenditures, but this alone does not override the other facts and circumstances of this case, which compel a conclusion that petitioners engaged in this cattle-raising activity with the intent to earn a profit. In light of respondent's approach, we decline to make any finding as to whether petitioners improperly deducted personal expenses on their returns, except as specifically discussed in this opinion. See Pallottini v. Commissioner, 90 T.C. 498, 500 (1988); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Haladay v. Commissioner, T.C. Memo. 1990-45. Based on the foregoing and considering all the facts and circumstances, we conclude that petitioners had an actual and honest objective to derive *407 a profit from the cattle-raising activity for the years in issue. Issue 2. Whether Depreciation Deductions Claimed by Petitioners Are Allowable Business Expenses
Respondent determined that certain depreciation deductions arising from the capitalized cost of paving around petitioners' horse barn were not allowable for the years in issue, because the expenditures were personal in nature. Petitioners assert that such depreciation deductions were allowable, since the horse barn was used primarily in their cattle-raising activity. The sections relevant to resolving this dispute are 162 and 167. Section 162 allows a deduction for "ordinary and necessary" business expenses, and section 167 allows a depreciation deduction for property used in a trade or business. The initial question to be considered, in either case, is whether the ownership and maintenance of the property in question related primarily to personal or to business purposes. In general, where the acquisition and maintenance of property is primarily associated with profit-motivated purposes, and personal use can be said to be secondary and incidental, a deduction for depreciation will be permitted. International Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970). *408 Conversely, if the acquisition and maintenance of the property is primarily motivated by personal considerations, the deduction for depreciation is not allowable. Sec. 262; International Artists, Ltd. v. Commissioner, supra.
In this case, petitioners hired a contractor to grade and pave an area adjacent to a horse barn located on their 27-acre tract of property. Petitioners recovered the expense associated with this paving by claiming depreciation deductions. Petitioners maintained the horse barn and associated paved areas primarily for use in their cattle-raising activity. The horses housed in the barn were used by petitioner husband to move cattle from one pasture to another. Since the horse barn was maintained primarily for use in the cattle-raising activity, which we have found was engaged in for profit, we hold that the petitioners are entitled to deduct the depreciation expenses arising from the construction of a paved area around the horse barn. Issue 3. Additions to Tax--Negligence
In her notice of deficiency, respondent determined that petitioners were liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) *409 for 1987, section 6653(a)(1) for 1988, and section 6662 for 1989. Petitioners assert that their actions were not negligent and, therefore, they are not liable for such additions. For 1987, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Also for 1987, section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. For 1988, section 6653(a)(1) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. For 1989, section 6662 imposes an accuracy-related penalty for negligence in the amount of 20 percent of the portion of any underpayment attributable to negligence or disregard of rules or regulations. [8] Sec. 6662(a) and (b). *410 Negligence under section 6653(a) is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (citing Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Similarly, for purposes of section 6662, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). However, if a taxpayer shows good faith reliance upon the advice of a tax professional in the preparation of the return, the addition to tax for negligence may be inapplicable. Weis v. Commissioner, 94 T.C. 473, 487 (1990). "To show good faith reliance, the taxpayer must establish that the return preparer was supplied with all necessary information and the incorrect return was a result of the preparer's mistakes." Id. The Commissioner's determination that the *411 taxpayer's underpayment was due to negligence is presumed correct, and the taxpayer has the burden of proving that the determination is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). Here, we have found that petitioners' cattle-raising activity was conducted for profit, and we have found that the depreciation deductions arising from the horse-barn paving were allowable. However, the parties conceded and agreed on a number of issues not specifically discussed in this opinion. See supra note 1. Among the conceded and agreed items, petitioners conceded that certain depreciation deductions claimed for paving expenditures around their personal residence were not allowable. As to these concededly nonallowable depreciation deductions, we find that petitioners were not negligent, since they provided their accountant with all the necessary information related to the expenditures and relied on his advice when claiming the depreciation deductions. Weis v. Commissioner, supra.In regard to the other conceded items, however, petitioners presented no facts and made no arguments to show that they were not *412 negligent; therefore, as to these items, petitioners have failed to carry their burden of proof. Accordingly, to the extent provided above, we sustain respondent's determination that petitioners are liable for additions to tax under sections 6653 and 6662 for the tax years 1987, 1988, and 1989. Issue 4. Addition to Tax--Substantial Understatement
Respondent determined that petitioners are liable for the addition to tax pursuant to section 6661 for tax years 1987 and 1988. Section 6661 provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a). An understatement is the difference between the amount of tax required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). An understatement is *413 substantial if it exceeds the greater of $ 5,000, or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). The understatement is reduced, however, to the extent it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). As discussed above, we have found that petitioners' cattle-raising activity was conducted for profit, and we found that the depreciation deductions arising from the horse-barn paving were allowable. However, in regard to the conceded and agreed-upon items, petitioners made no arguments and presented no evidence regarding the substantial understatement addition to tax. Therefore, petitioners have failed to carry their burden of proof as to those items. Accordingly, if the recomputed deficiency under Rule 155 attributable to those items satisfies the statutory percentage or amount, petitioners will be liable for that addition to tax. Issue 5. Additions to Tax--Increased Interest Rate for Tax-Motivated Transaction
Respondent determined that petitioners are liable for the increased rate of interest on deficiencies arising from tax-motivated transactions *414 under section 6621(c) for taxable years 1987 and 1988. Under section 6621(c), if there is a substantial underpayment attributable to a tax-motivated transaction, the applicable rate of interest on the deficiency is 120 percent of the normally imposed rate of interest. For section 6621(c) purposes, the term "substantial underpayment attributable to tax motivated transactions" means an underpayment of tax that is: (1) Attributable to a tax-motivated transaction and (2) in excess of $ 1,000. Sec. 6621(c)(2); Weis v. Commissioner, supra at 491. Certain transactions are deemed to be "tax motivated" by section 6621(c)(3). In addition, the Secretary is given authority to promulgate regulations specifying additional transactions that are deemed tax motivated. Sec. 6621(c)(3)(B). Under temporary regulations promulgated by the Secretary, deductions disallowed under section 183 are deemed to be attributable to a tax-motivated transaction. Sec. 301.6621-2T, Q&A-4, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). Here, we have found that petitioners engaged in their cattle-raising activity with the requisite section *415 183 profit objective, and respondent has not alleged, nor does the evidence indicate, that petitioners engaged in any other tax-motivated transaction. Therefore, we hold that petitioners are not liable for the increased rate of interest imposed by section 6621(c). To reflect the foregoing opinion and the agreements and concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 24,974.↩
2. Interest will be imposed on $ 24,974 (1987) and $ 19,909 (1988) at 120 percent of the rate normally imposed on deficiencies.↩
1. By agreement, stipulation, and concession, the parties have resolved a number of issues raised in the notice of deficiency. We leave it to the parties to include their agreed figures in their Rule 155 computations.↩
2. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. Respondent's primary position was that the 1987, 1988, and 1989 losses arising from petitioners' cattle-raising activity were not allowable, since petitioners did not engage in the activity with a profit motive. Having disposed of this issue in favor of petitioners, we still must consider respondent's alternative position, i.e., certain expenditures related to the activity were not allowable under sec. 162.↩
4. At trial and on brief, petitioners conceded that the cost of a briefcase which they gave to a business associate was not fully deductible. Rather, petitioners acknowledge that only $ 25 of the cost of the briefcase was deductible, citing sec. 274(b)(1). Respondent did not address this concession at trial or on brief. Accordingly, we find respondent has accepted this concession. Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48↩ (1987).
5. Petitioners contend that for 1987, 1988, and 1989 their Brangus herd consisted of 49, 58, and 64 animals, respectively, not including unregistered mature cattle and unweaned cattle. Respondent argues that these numbers are overstated, noting that the International Brangus Breeders Association's (IBBA) records reflect the yearend number of registered cattle owned by petitioners to be 28, 46, and 55 for 1987, 1988, and 1989, respectively. Furthermore, respondent argues that the IBBA numbers are overstated, since those numbers do not reflect registered cattle that were sold or that died. Petitioners, however, dispute the completeness of the IBBA records. We need not resolve this dispute to properly dispose of the legal issues presented by this case.↩
6. Sec. 183(b)(1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit shall be allowed (e.g., interest and State and local taxes). Sec. 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)."↩
7. Petitioners purchased all three tracts of land primarily for the purpose of raising cattle. Thus, the holding of the land and the cattle-raising activity are considered a single activity for purposes of determining expected appreciation of value in assets under sec. 1.183-2(b)(4), Income Tax Regs.Engdahl v. Commissioner, 72 T.C. 659, 668 n.4 (1979); Hoyle v. Commissioner, T.C. Memo. 1994-592; sec. 1.183-1(d)(1), Income Tax Regs.↩
8. The additions to tax for negligence under sec. 6653(a) were deleted for returns due after Dec. 31, 1989, and were replaced with an accuracy-related penalty under sec. 6662. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c), 103 Stat. 2106, 2399.↩